No. 18,425.

JOHN E. SMITH, *Appellee*, v. THE JOPLIN & PITTSBURG RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTRIBUTORY NEGLIGENCE—*Question of Fact.* Upon the undisputed evidence and the facts found by the jury, the question whether the plaintiff was guilty of contributory negligence is one of fact.

2. NEGLIGENCE—*Trial—Instruction—Not Prejudicial Error.* The consideration of error in an instruction allowing the jury to find a verdict upon grounds of negligence which did not cause or contribute to the injury is unnecessary where the jury bases its verdict upon other grounds.

Appeal from Crawford district court; JOHN L. KIRKPATRICK, judge *pro tem.* Opinion filed December 6, 1913. Affirmed.

*Edward C. Wright,* of Kansas City, Mo., and *John P. Curran,* of Pittsburg, for the appellant.

*B. S. Gaitskill,* of Girard, and *John M. Wayde,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment award-ing damages for injuries suffered in a collision of an electric interurban car with an automobile.

The right of way of the railway adjoins and is par-allel to a public road extending north and south. A hedge row stood upon the line between the road and the right of way. A cross road extended east and west across the north-and-south road and through a gap in the hedge and over the right of way and track of the defendant. At the time of the collision the hedge was about fifteen feet in height and its branches extended about seven feet on each side. The gap was fifty feet in width. The east rail of the railway track is about sixteen feet from the center line of the hedge. The track is five feet wide, measuring to the outer sides of the rails, and the car was nine feet wide. The plain-tiff, driving an automobile in which his wife and daugh-ter were seated, drove north upon the road first re-ferred to and turned west upon the cross road. He stopped at the turn near or in the gap in the hedge to look and listen for a car. From his seat five and one-half feet from the front of the automobile he could see the track for a distance of only fifty feet north and south of the crossing, because of the projecting branches of the hedge. Hearing no whistle and not hearing or seeing any indication of an approaching car, he proceeded at low speed, running at the rate of three miles an hour, until the front of the automobile was at or very near the east rail, when he saw a car fifty feet away coming from the north. He immediately re-versed his machine and started backward, but the car struck the radiator and hood, causing the injuries com-plained of. The car was running at the rate of twenty miles an hour. The obstruction of the view of the track continued until the plaintiff was within seven feet of

the east rail of the track.   At that point he might have seen the approaching car eighty rods away.

The principal contention of the defendant is that contributory negligence of the plaintiff is conclusively shown by the evidence because he did not stop after passing through the hedge and again look and listen. It is insisted that from the undisputed facts the court should declare as matter of law that the plaintiff was negligent, although the jury in answering special questions found that he was not.

If only one conclusion can be drawn from undisputed facts, the question of negligence is one of law.   (*Railway Co. v. Hanson,* 67 Kan. 256, 72 Pac. 773; *Johnson v. Railroad Co.,* 80 Kan. 456, 459, 103 Pac. 90.)   If reasonable minds might differ upon that question the jury must decide.   (*Beaver v. A. T. & S. F. Rld. Co.,* 56 Kan. 514, 43 Pac. 1136; *Westine v. Railway Co.,* 84 Kan. 213, 219, 114 Pac. 219.)

The plaintiff knew that he was approaching the track. He saw it in turning west and stopped at the turn accordingly.   If the whistle upon the car was sounded he did not hear it.   He could not see the car at that point, because the hedge obstructed his view.   Passing by the obstruction and when first within the zone of clear vision the front of his automobile was within about eighteen inches of the track.   Taking into consideration the overhang of the car, he was right at the point of danger.   It is true that a situation may be such that ordinary prudence will require a person seated in a vehicle approaching a crossing not only to stop, but if necessary to alight, or leave his seat, or change his position in order to take observations, but ordinarily such a duty can not be declared as a matter of law; it must be determined by the jury as a question of fact.   In this case the nature of the vehicle; the place and duty of the driver in managing it; the location of the steering wheel directly in front of him; the space between

his seat and the front of the car; the distance from the side of the hedge to the track; the speed at which he was driving; his duty to look in both directions, and every other circumstance revealed by the evidence must be considered in determining whether the driver acted with reasonable prudence. Upon a careful consideration of these matters it can not be held as matter of law that the plaintiff was negligent. The question of contributory negligence was one of fact for the jury.

One of the instructions was objected to on the ground that it authorized a verdict based upon any one of the acts of negligence charged in the petition. One of these specifications was the failure of the defendant to construct the crossing in the manner required by the statute. A special finding, however, was returned that the defendant's negligence consisted in handling the car in a careless manner. A more particular finding was not requested. It is true that no liability could be founded on the defective crossing alone, for it was not a cause of the injury, but this finding of the jury makes any discussion of the alleged error unnecessary.

The judgment is affirmed.

BURCH, J. (dissenting) : The facts are undisputed, and the question is whether or not the plaintiff took those precautions for his safety which the law required him to take. It was his duty to use his faculties of sight and hearing, and to take the steps necessary to make those faculties available for efficient use. The statement made in *Railway Co. v. Jenkins,* 74 Kan. 487, 488, 87 Pac. 702, that a man warned of danger by the presence of a railway track "must be vigilant in trying to see" has not to my knowledge been overruled.

Everybody knows that an interurban car is wider than the track on which it runs. In this case the track lay behind a hedge wall fifteen feet high and fourteen feet wide, which obstructed both sight and hearing. The plaintiff stopped at the turn of the road where it

was impossible to see the on-coming car far enough away to avoid a collision. Then he simply drove on, taking his chances .and reaping the consequences. The result is that he was guilty of contributory negligence as a matter of law.

In my judgment the law applicable to persons in the situation of the plaintiff is well stated and discussed in the case of *New York Cent. & H. R. R. Co. v. Maidment,* 93 C. C. A. 413, 168 Fed. 21. The syllabus reads as. follows:

"Because of the fact that a collision between a railroad train and an automobile endangers, not only those in the automobile, but also those on board the train, and also because the car is more readily controlled than a. horse vehicle, and can be left by the driver, if necessary, the law exacts from him a strict performance of the duty to stop, look, and listen before driving upon a, railroad crossing, where the view is obstructed, and to do so at a time and place where stopping and looking and listening will be effective." (Syl. ¶ 1.)

In the opinion it was said:

"With the coming into use of the automobile, new questions as to reciprocal rights and duties of the public and that vehicle have and will continue to arise. At no place are those relations more important than at the grade crossings of railroads. The main consideration hitherto with reference to such crossings has been the danger to those crossing. A ponderous, swiftly moving locomotive, followed by a heavy train, is subjected to slight danger by a crossing foot passenger, or a span of horses and a vehicle; but, when the passing vehicle is a ponderous steel structure, it threatens, not only the safety of its own occupants, but also those on the colliding train. And when to the perfect control of such a machine is added the factor of high speed, the temptation to dash over a track at terrific speed makes the automobile, unless carefully controlled, a new and grave element of crossing danger. On the other hand, when properly controlled, this powerful machine possesses capabilities contributing to safety. When a driver of horses attempts to make a crossing and is suddenly confronted by a train, diffi-

culties face him to which the automobile is not subject. He can not drive close to the track, or stop there, without risk of his horse frightening, shying, or overturning his vehicle. He can not well leave his horse standing, and if he goes forward to the track to get an unobstructed view and look for coming trains he might have to lead his horse or team with him. These precautions the automobile driver can take, carefully and deliberately, and without the nervousness communicated by a frightened horse. It will thus be seen an automobile driver has the opportunity, if the situation is one of uncertainty, to settle that uncertainty on the side of safety, with less inconvenience, no danger, and more surely than the driver of a horse. Such being the case, the law, both from the standpoint of his own safety and the menace his machine is to the safety of others, should, in meeting these new conditions, rigidly hold the automobile driver to such reasonable care and precaution as go to his own safety and that of the traveling public. If the law demands such care, and those crossing make such care, and not chance, their protection, the possibilities of automobile crossing accidents will be minimized. In the case of trolleys crossing railroads at grade, the practice is general for the conductor to go ahead and from the track signal the halted car to advance. This would, of course, be impracticable as a rule for automobiles; but it illustrates the trend of the law, as the size of crossing vehicles makes collision with them more serious, to enforce greater safety precautions." (p. 415.)

I am authorized to say that Mr. Justice PORTER concurs in this dissent.