No. 18,909.

KATIE A. FRANCIS, *Appellee,* v. FORD HARVEY et al., as. Receivers, etc., *Appellants.*

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Crossing Street Railway Tracks—Contributory Negligence.* The following facts prove contributory negligence and preclude a recovery for injuries caused by running a street car over a crossing at a negligent rate of speed without warning signals: The plaintiff, with two others, halted at a street intersection between 8 and 9 o'clock on an. October evening until an east-bound car passed by. The plaintiff, leaving her companions, then ran or hurried north. across the south track, upon which the car had just passed, and. the space between the tracks, and onto the north track, where she was struck by a west-bound car. At the place where she first stood, three or four feet south of the south track, she could see to the east a distance of 1200 feet except while her view was obstructed by the passing car. When she started. north the street car had gone 125 feet beyond the crossing and she could see the north track for a distance of 150 or 155 feet to the east. At the south track and beyond until the collision occurred she could see for 1200 feet. She looked east. the moment of starting but not afterwards. The colliding car was lighted and the headlight burning. The crossing was also lighted. The plaintiff's eyesight was good, she was not. encumbered in any way, and there was nothing to divert her attention. She was familiar with the place, lived near by, and knew that cars were constantly passing. The ground was level and the tracks were straight.

Appeal from Wyandotte district court, division No.. 3; HUGH J. SMITH, judge. Opinion filed June 6, 1914.. Reversed.

*O. L. Miller,* and *C. A. Miller,* both of Kansas City, for the appellants.

*Dan Mallison, C. Angevine, J. K. Cubbison,* and. *William G. Holt,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action is to recover damages for personal injuries resulting from a collision at a street crossing in Kansas City.

The plaintiff, with her husband and sister, approached the intersection of Kansas avenue, which extends east and west, and St. Paul street, extending north and south. Reaching the south side of the avenue on the west side of St. Paul street, they observed a car approaching from the west upon the south street-car track on the avenue. Thereupon they walked across to the east side of St. Paul street, and stood there, three or four feet south of the south track, until this east-bound car had proceeded 125 feet beyond the crossing. The plaintiff, and perhaps all three, then started north, but she hurried on. She testified that she did not run but her husband says she did. Whether running or not she left her companions and hurried across the south track and the space between the two tracks to the north track, where she was picked up by the fender of another of the defendant's cars bound west. She was carried about forty feet beyond the west side of the street, where the car was stopped, and the plaintiff was rescued.

Kansas avenue is eighty feet and St. Paul street is sixty feet in width between property lines, both are level at and near this crossing, and the car tracks are straight. The collision occurred at 8:30 o'clock P. M., in October. The weather was clear and warm, and there was no wind. The crossing was lighted, and the car was lighted and the headlight burning. The plaintiff had good eyesight. She was familiar with the crossing, lived close by, and knew that cars were constantly passing along the tracks.

The car that struck the plaintiff had been delayed and was not running on schedule time. The plaintiff's witnesses said that it was running fast; one said

nearly twice as fast as usual, but no precise estimate of the rate of speed was given. From the place where the plaintiff stood waiting for the east-bound car to pass she and her companions could see along the tracks to the east for 1200 feet, except while the view was obstructed by the east-bound car. When that car had gone on for 125 feet, at the moment the plaintiff started north she could see east along the north track for 155 feet, and she testified that she then looked in both directions and saw no car. We quote now from her testimony:

"Q. You hurried and went as fast as you could? A. Yes.

"Q. When you got out to about the rail of the south track . . . you looked down the street to see if there was a car? A. I looked when I started.

"Q. Did n't look afterward? A. No, did n't look afterwards; I looked when I started.

"Q. You looked down the street to see whether a car was coming from the east, did you? A. Yes.

"Q. When you started? A. Yes.

"Q. When you got up onto the track, did you look then? A. No.

"Q. When you got between the two tracks, did you look? A. No, sir.

"Q. When you stepped over onto this other track, did you look? A. Into the south track?

"Q. Yes, just at the south rail of the track. A. No, sir; I did n't look. . . .

"Q. Well, now then, supposing that a car had been anywhere along in here, within 125 feet of you, could n't you have seen it if it was on this north track going west, had you looked when you were between the two tracks there? A. I suppose so, but I did not look."

The plaintiff's husband testified:

"From St. Paul street I could see a car coming along there, along the track anywhere for 1200 to 1250 feet from St. Paul street.

"At that time of night with the lights in the car burning and headlight burning a car running along the street would be a plain object to be seen if no obstructions. . . . We came up to southwest corner of St. Paul and Kansas and went out into the street

and saw car coming, and walked out in the street east to east crossing of St. Paul. When the car going east passed us we were at east crossing of St. Paul. The car had passed us 125 feet before we started from the point where we were standing. . . . When I last saw it the car had gone east 125 feet and we were three or four feet south of track. Looking down the track east from where we stood, on account of east-bound car, you could see a car coming on north track 155 feet.

"I looked and did not see a car. My wife looked; can't say whether she saw any. I did not move north. My daughter-in-law did not move north. We stood right there. My wife went by herself, went off hurriedly across the track. . . . I did not see the car at all until the accident happened. I was looking west. As I turned I saw where she was, the car swept by and picked her up. The first I saw of this car was just as it hit her. . . . . While I was there I noticed another car coming down from Packard. I suppose if I had been looking east I might have seen this car (the one that struck her) a few minutes sooner, probably a minute sooner. I was looking west and saw that car coming round off Packard and turned round just in time to see the car strike her and knock her down. . . . The wife went from where we were standing across the south track, across the space between the tracks and about the middle of the north track, about ten feet, on a run, and when she got there the car was right there and hit her. . . . From the situation there, I should think when she got between the tracks she could see down the tracks. When she got north of the first track in the middle between the two tracks she could see and have a plain view down the track for 1,200 feet I suppose."

The sister's testimony did not differ materially from that of the husband, only she said that all three started on together, and that Mrs. Francis hurried away from them at or near the south track.

It can not be disputed that if the plaintiff had looked east when upon the south track, or at any time before being hurt, she would have seen the approaching car. It is argued that having looked when she started, and having only 16 feet to go, she was not bound to look

again.    But is it true that a person having an un-obstructed view of a straight track, with nothing to distract attention, knowing that cars are constantly passing, may thus hurry forward without looking and not be chargeable with negligence?

In *Marple v. Railway Co.*, 85 Kan. 699, 118 Pac. 690, it appeared that the person whose life was lost approached the crossing just as a car was passing on the first track in the direction opposite to that of the one by which he was killed.    It was said in the opinion:

"The all-important question relates to his conduct after he had passed in the rear of the southbound car and reached the space between the tracks.    There that car could not interfere with his view, which was then unobstructed, as the jury found.    If he then saw the on-coming north-bound car, or in the exercise of ordinary care ought to have seen it, so near and apparently running with such speed as to make the attempt to cross in front of it dangerous in the judgment of a person of ordinary prudence in that situation, then he was negligent, and there should be no recovery for resulting injuries."    (p. 702.)

In this case we are not left in doubt whether the plaintiff looked for she is emphatic in her statement that she did not.    She would have seen the car had she looked.    She did not look after she started to cross. She ran or hurried away from her companions.    There is no claim that the motorman discovered her peril in time to avoid the collision.    In this situation the rule announced in *Railway Co. v. Ryan,* 69 Kan. 538, 77 Pac. 267, applies.    It was there held :

"Where, upon the trial of an action for personal injuries, plaintiff testified that she alighted from an east-bound street car and passed back of it and to the northward upon a parallel track four feet distant on which cars traveled in an opposite direction, without looking for an approaching car, and sustained injury, and that by looking eastward along the space between the parallel tracks, after passing by the end of the standing car, she could have seen an approaching car

for a distance of two blocks, it is *held,* that it is error to overrule a demurrer to plaintiff's evidence." (Syl.)

The plaintiff relies upon *Wiley v. Interurban Railway Co.,* 89 Kan. 84, 130 Pac. 659. In the opinion in that case the following quotation from *Nappli v. Seattle, Renton & S. R. Co.,* 61 Wash. 171, 112 Pac. 89, was made with aproval:

"Assuming that the respondent should have seen the car before he drove upon the track because the car was evidently in plain view at that time, it was one hundred feet or possibly a block away. Under these circumstances, we think it can not be said, as a matter of law, that the respondent should not have attempted to cross over the tracks. He had a right to assume that the car was under control and, when the car was that far away, that he would be in no danger and might pass in safety without risk of danger. At any rate the question whether he was negligent in attempting to cross the track when the car was that far away was a question for the jury. Street crossings are to be used, and the mere fact that an approaching car is in sight does not determine the right of a traveler to cross. His right depends upon what a reasonably careful man would do under the circumstances. If the approaching car is so close and coming so fast that it can not be stopped in time to avoid a collision, and such facts are or should be observed, then a person attempting to cross may be said to be negligent as a matter of law. But where an approaching car is far enough away to be stopped after a person has passed upon the tracks, or when a reasonably careful man would undertake to cross ahead of it, then it can not be said, as a matter of law, that a person attempting to cross is negligent." (p. 173.)

In this case, the distance at which the approaching car could have been seen was 1200 feet or more. A mere glance in that direction would have been sufficient. Indeed it seems strange that the headlight was not apparent to the plaintiff as she proceeded north.

In *Smith v. Street Railway Co.,* 91 Kan. 31, 136 Pac. 930, the driver of an automobile, whose view of the track was obstructed by a hedge, drove his car so close to the track that it was caught by the over-hang of

the electric car. The situation of the driver of such a vehicle, his place in the car, the fact that he stopped at the first place after passing the obstruction when he first came within the zone of vision, with other circumstances, were commented on in the opinion, holding that a question of fact for a jury was presented. Here the plaintiff was on foot, not encumbered in any way, with no vehicle to manage, and nothing to divert attention or to hinder observation. The naked question is presented whether it shall be held as matter of law that in such a situation, with ample opportunity to look, and no reason for not looking, a failure to do so is negligence. We are constrained to hold that it is, and that upon the plaintiff's own testimony she should not recover.

The judgment is reversed with directions to sustain the demurrer to the evidence and render judgment for the defendants.