No. 19,857.

FRANK GALLOWAY, a Minor, etc., *Appellee*, v. THE HUTCHINSON INTERURBAN RAILWAY COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

STREET CARS—*Moving in Opposite Directions on Parallel Tracks—Personal Injuries—Contributory Negligence as a Matter of Law.* Under the facts stated in the opinion it is held that a passenger on a northbound street car who alighted while the car was in motion and before it reached the place for the discharge of passengers, passed around the rear end of the car and was struck by a southbound car moving on a parallel track, was guilty of contributory negligence as a matter of law.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 8, 1916. Reversed.

*A. C. Malloy,* and *C. M. Williams,* both of Hutchinson, for the appellant.

*F. L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained through the negligence of the defendant. The plaintiff recovered and the defendant appeals.

The defendant operates a double-track street railway running north and south on Main street in the city of Hutchinson. The inside rails of the two tracks are fifty-eight inches apart and the clearance between cars is about a foot. The plaintiff was a passenger on a northbound car operated on the east track. At a point on Eighth street, which extends east and

Galloway v. Interurban Railway Co.

west across Main street, he alighted at the rear and on the east side of the car, passed behind it, and was struck by a southbound car operated on the west track. Eighth street is thirty-nine and eight-tenths feet wide, and twenty-seven feet wide from curb to curb. Northbound cars stop to receive and discharge passengers at the north side of the street. The southbound car was moving at a rate of speed placed at from eight to thirty miles per hour. An ordinance limited the speed of cars in that part of the city to fifteen miles per hour. There was evidence that no gong was sounded and there was evidence that there was no one on the street as the two cars approached Eighth street. The plaintiff was riding on the rear platform at the side of the back door of the northbound car. He testified as follows:

"A. I told the conductor I wanted off at Eighth, and he·pulled the bell rope, and we were between the middle and the north side of Eighth, and when I started to alight the car had practically come to a stop,—if it had n't come to a stop, it had practically come to a stop,—and he pulled the rope for the car to resume its speed, and as he pulled it I got off the car right there; I went around behind it,—I went right around behind it, —it was n't over four feet from me when I went around behind it, and as I stepped out into plain view of the other track I saw the other car coming, and at that time it was, I should judge, three-fourths of a car length away from me. I tried to jump back then, and that is all I know about it.

.      .      .      .      .      .      .      .      .      .      .

"Q. Where do you think he gave this signal to go ahead? A. It was between the center of Eighth Street and the north side of it. It was n't until he gave this signal that I got off; I was going to ride to the corner.

"Q. Somewhere between the center and the north side of Eighth? A. Yes, sir; I would judge it was then. I judge it was, because I was even with the sidewalk when I started across.

"Q. You say you judge it was; do you know where it was? A. I started,—started to start across the street, perhaps a little angling to the northwest.

"Q. The car was in motion after you got off? A. It started in motion.

"Q. Started in motion? A. Yes, sir; it started to kind of move afterwards.

"Q. It never did stop? A. If it did n't come to a stop, it had just,— in an instant it would stop.

.      .      .      .      .      .      .      .      .      .      .

"Q. When you got over behind the street car and attempted to cross the track beyond, did n't you look to see whether there was any other car coming? A. I looked as I was crossing the street; yes, sir.

.      .      .      .      .      .      .      .      .      .      .

"Q. How did you get off? A. I got off and stopped and went around behind the car.

"Q. Which way did you face as you got off? A. Well, sir; I just got off with my face toward the north and then turned right around and went around behind it.

"Q. You got off facing towards the north? A. Yes, sir.

"Q. And as the car proceeded you turned toward the left to go across there. A. I went behind it; it had n't made much progress yet.

"Q. It had n't made any then, had it? A. Perhaps a few inches.

"Q. According to that the car must have stopped just prior to your getting off? A. Practically speaking; yes, sir.

"Q. I don't know what you mean by 'practically speaking.' A. It did n't stop prior to my getting off, but it had just about stopped.

"Q. It had n't stopped then? A. If it was going at all it was nothing that,—it was n't going at all practically; you might say it was stopped.

"Q. It was stopped? A. ·Yes, sir.

"Q. At what rate of speed were you proceeding across the street? A. Well, about my usual gait.

"Q. You mean by that, what? A. Walking."

The jury discredited this testimony in important particulars and returned the following special findings of fact:

"Q. 1. Did plaintiff get off the north-bound car while it was in motion? A. Yes.

"Q. 2. How fast was it going at that time? A. Four miles per hour.

"Q. 3. Where, with reference to the south line of Eighth Avenue did the plaintiff get off? A. South of the center of Eighth street.

"Q. 4. Did plaintiff run after getting off? A. No.

"Q. 6. Did plaintiff stop or look and listen to see if a car was approaching from the north before going on west track? A. Yes.

"Q. 7. Did plaintiff see the south-bound car before he got near enough for it to strike him? A. No.

"Q. 9. Could the motorman have stopped the south-bound car after seeing plaintiff in time to avoid the accident. A. No.

"Q. 10. Was there anything at or near Eighth avenue to apprise the motorman of the south-bound car of danger? A. Yes.

"Q. 11. If you ·answer the last question in the affirmative, state what it was? A. North-bound street car.

"Q. 13. Where, with reference to the south line of Eighth avenue did plaintiff and south-bound car come into contact? A. Center of Eighth street."

The court set aside the sixth finding so far as it indicated that the plaintiff stopped before going on the west track. The ' negligence charged in the petition consisted in running the southbound car at an excessive rate of speed without giving warning of its approach and without having it under control

when passing the northbound car which had just discharged the plaintiff at a street intersection. Motions were made for judgment on the special findings and for a new trial, which were overruled.

It is difficult to perceive in what particular the motorneer of the southbound car was negligent toward the plaintiff, and breach of duty to use due care toward the aggrieved person is indispensable to recovery. (*Express Co. v. Everest,* 72 Kan. 517, 522, 83 Pac. 817.) The jury did not find and could not find from the evidence that the motorneer of the southbound car was required to sound the gong, run at a moderate rate of speed or have his car under control because of the amount of traffic or the number of pedestrians at the Eighth street crossing when he approached it. There was no dispute that he could see whatever there was to see as the two cars approached the crossing from opposite sides, and the jury limited the appearance of danger to the presence of the northbound car alone. This car, however, was south of the center of the street when the plaintiff alighted. It had not reached the place where it should stop if passengers were to be discharged and it was still moving at the rate of four miles per hour. The plaintiff was struck in the center of the street, substantially twenty feet south of the place where he should have alighted. The motorneer of the southbound car had the right to believe, from the practice and from the motion of the northbound car, that if passengers on that car were to be discharged at all they would not be discharged south of the center of the street. If this were done he would be safely beyond the place, and any one who alighted and desired to cross the street would be at a distance in the rear of his receding car.

The court gave the jury the following instruction:

"The jury are instructed that the speed at which defendant's southbound car was running when it struck the plaintiff is to be considered in the light of all the circumstances. The speed that might be negligent under one set of conditions might not be negligence in another. A rate of speed greater than provided by the ordinances of the city might not be negligence under certain circumstances and a lower rate of speed than provided by the ordinances might be negligence under other circumstances. In this connection you should take into consideration the approaching car from the opposite direction, whether or not such

approaching car stopped at the crossing where it was in the habit of permitting passengers to alight and every fact and circumstance surrounding the parties at the time that the southbound car struck the plaintiff."

This instruction fairly stated the law. In the case of *Express Co. v. Everest,* supra, the court said:

"In every instance the duty of taking care presupposes knowledge, or its equivalent, of the particular state of facts out of which it arises. There must be prevision of danger and likelihood of injury, for the law imposes responsibility for that only which reasonable prudence can anticipate." (p. 524.)

A northbound car at a point south of the center of Eighth street and proceeding at a rate of four miles per hour was not a warning to the motorneer of the southbound car that his car might encounter a passenger alighting from the other car and furnished no occasion to reduce speed, put the car under control, or sound the gong. The finding of the jury to the contrary shows the view it took of the matter and vitiates the general verdict.

The findings show that the plaintiff did not go directly across the east track but walked in a northwesterly direction until he was struck. He testified to the same fact. He followed the car from which he alighted for some distance. The two tracks were so close together that when he passed from behind the northbound car a movement over the space of about one foot placed him in danger. A single step at an ordinary gait from the place where his vision was obscured placed him irretrievably in danger. Unable to see until he was on the very verge of danger, he walked at his usual gait into a place of danger, looking as he walked. Such conduct is irreconcilable with the standard of due care which the law recognizes.

Conceding that the rate of speed of the southbound car ought not to have exceeded fifteen miles per hour, the plaintiff was guilty of negligence which contributed to his injury. When he alighted he did not look along the east side of the car to see if a car were approaching from the north on the west track. Not hearing any gong while he was behind the northbound car he was called upon to make use of his eyesight before attempting to cross the space between the two tracks.

He should have allowed the northbound car to move forward far enough for him to obtain a fair view of the west track, or he should have looked north along the space between the two tracks before abandoning his place of safety. Instead of this his movements projected his body into danger at the moment he gained an opportunity to see. He voluntarily prevented such use of his faculty of sight as the law required and he was guilty of negligence as a matter of law.

That a street-car track is a warning of danger, that each track where there are more than one is a warning, that a car may be expected at any time, and that a pedestrian must look and listen before attempting to cross, has been said so many times that a reference to the decided cases is not necessary. The purpose of looking for an oncoming car is to avoid the danger incident to getting in front of it or so near to it as to cause a collision. The time to do this is while the result of observation may be utilized, and means and opportunity still exist to avoid a collision. The place to do this is necessarily a place far enough removed from the path of the car that it can not strike while the observation is being made. If necessary, prudent and careful means besides looking and listening must be employed to ascertain whether or not a car is coming. (*Burns v. Railway Co.*, 66 Kan. 188, 71 Pac. 282; *Adams v. Railway Co.*, 93 Kan. 475, 144 Pac. 999.)

The case of *Railway Co. v. Ryan*, 69 Kan. 538, 77 Pac. 267, is quite similar with respect to the facts and is identical in principle with the one under decision. In the Ryan case the double tracks of the street railway ran east and west. The plaintiff alighted at the rear and on the south side of an eastbound car on the south track. She went around the rear end of the car and was struck by a westbound car on the north track. As she was passing the west end of the standing car she looked eastward for a car but could see only ten or fifteen feet toward the east along the north track. Her movements were hurried. Because she did not either wait for the car which obstructed her view to move on or look along the space between the two tracks before going upon the north track the court held she was guilty of contributory negligence. Here the plaintiff did not wait for the car which obstructed his view to move far enough in advance of him to give him a

view of the west track and he did not look along the space between the two tracks *before* moving across it. Only a part of that space constituted a zone of safety, and the same movement which gave him an opportunity to look carried him into danger. In the Ryan case mention was made of the fact that by looking along the space between the two tracks the plaintiff could have seen a car approaching at a distance of two blocks. The westbound car, which was moving rapidly, was not that far away or the plaintiff would not have been injured. The important thing was, as in this case, that if the plaintiff had made proper use of her faculty of sight while in a place of safety she could have remained there and could have avoided collision with the car which overtook her immediately upon her leaving a place of safety.

The plaintiff cites the case of *Stuckey v. Dunham*, 96 Kan. 427, 151 Pac. 1107. In that case a car was propelled past a standing car which had stopped at the proper place for the discharge of passengers and was discharging its passengers. The plaintiff also cites the case of *Marple v. Railway Co.*, 85 Kan. 699, 118 Pac. 690. That case involved the question whether or not an approaching car was far enough away and its apparent speed was such that the plaintiff was justified in attempting to cross the track in front of it.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the defendant.