No. 29,643.

OPAL HARRIS, *Appellee*, v. THE KANSAS CITY PUBLIC SERVICE
COMPANY, *Appellant*.

(297 Pac. 718.)

Opinion filed April 11, 1931.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave,* all of
Kansas City, for the appellant.

*David F. Carson,* of Kansas City, and *Walter W. Calvin,* of Kansas City,
Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sus-
tained at a street crossing when plaintiff was struck by one of de-
fendant's street cars.

The accident happened at the intersection of Twelfth and Wal-
nut streets in Kansas City, Mo. Walnut street runs north and south
and Twelfth street runs east and west. On both streets are double
railway tracks on which defendant's street cars are operated.

On the evening of November 21, 1928, plaintiff was at the southwest corner of Twelfth and Walnut streets and desired to cross to the north side of Twelfth street. She looked to see if she could discover a traffic policeman who would give the signal when it was safe for her to cross, but no officer was in sight at that moment. On the south railway track on Twelfth street several street cars were standing, headed eastward. One of these cars was projected almost its full length into Walnut street. Behind it a second car was standing so that its front end was in the sidewalk lane where pedestrians should cross on the west side of Walnut.

According to plaintiff's testimony, when she failed to locate a traffic policeman she happened to notice the motorman on defendant's second car. He nodded his head and beckoned to her to cross, and she started to do so. She passed the front of this second street car and at the rear of the one ahead of it. The space between these two street cars was about four feet. The moment after she passed between these two street cars and took one step beyond, she was struck by another of defendant's street cars going west. She fell into the basket and was carried some distance, receiving certain injuries.

In this action, which followed, plaintiff charged negligence in various particulars, including the failure of the motorman who had beckoned her to warn her of the approach of a street car on the west-bound track, the failure of the motorman on the west-bound street car to ring a bell or give other warning of his coming, and the operation of the west-bound car at a high and dangerous rate of speed.

Defendant's answer contained a general denial and a plea of contributory negligence.

The jury returned a verdict in favor of plaintiff for $3,000 and answered several special questions:

"Q. 1. Was the east-bound trolley car, in front of which plaintiff passed before she was struck by a west-bound car, standing with its front door open at the time she passed, receiving and discharging passengers? A. Yes.

"Q. 2. Was there one of defendant's east-bound Twelfth street cars standing in the intersection of Walnut street with other cars ahead of it extending east within four or five feet of the front end of the car in front of which plaintiff passed north before she was struck? A. We believe so.

"Q. 3: Did the plaintiff, after she passed in front of the standing east-bound Twelfth street car on the west side of Walnut street, stop or look to the east to see whether any west-bound trolley car was approaching? A. No.

"Q. 5. At what rate of speed was the car that struck the plaintiff approaching at the time the motorman first saw her before the collision? A. Approximately six to ten miles per hour.

"Q. 6. How far west of the west building line of Walnut street was the plaintiff at the time the west-bound Twelfth street car collided with her? A. We believe she was in the sidewalk lane.

. . . . . . . . . . . . . . .

"Q. 8. If you find a verdict for the plaintiff, state specifically each act of negligence the defendant was guilty of that caused her injury. A. No warning signal by west-bound car and failure of operator to properly watch sidewalk lane for pedestrians and approach lane under control. East-bound operator indicated by signal passage way was clear for plaintiff.

"Q. 9. Did plaintiff at any time before being struck, look for an approaching car from the east? A. No.

. . . . . . . . . . . . . . .

"Q. 11. When plaintiff was approximately two feet away from the south rail of the west-bound street-car track, how far distant was the west-bound street car which struck her? A. We believe car was just entering sidewalk lane."

Judgment was rendered on the general verdict and defendant appeals, assigning various errors—the ruling on the demurrer to plaintiff's evidence, admission of incompetent testimony, instructions given and refused, and the overruling of defendant's motion for judgment on special findings of the jury.

It may shorten our task to note first the defendant's complaint about the instructions. The trial court refused defendant's request that the jury be instructed that from the signal given by the motorman of the east-bound street car on the south track the plaintiff was not warranted in assuming that no car was coming on the north track in the opposite direction. Her testimony was that there was a line of street cars standing on the south track headed east, that in the sidewalk lane where she wished to cross was a space of about four feet between two of these street cars, and that people were passing between them.

"I looked up and glanced at the motorman to see that he didn't start up and catch me between those street cars and he was motioning to go on.

. . . . . . . . . . . . . . .

"A. . . . I looked up and seen him motion me across and so I stepped out and walked across.

. . . . . . . . . . . . . . .

"Q. You mean he waved his hand in a certain direction? A. Yes, sir.

. . . . . . . . . . . . . . .

"Q. Tell the jury if he nodded his head. A. Yes, he was nodding his head at the same time, like that (indicating) as he was motioning to me to cross."

There was no testimony that the motorman of that east-bound street car was charged with the duty of directing pedestrian traffic. His signal to plaintiff could mean no more than an assurance that he would not start his car and catch her while she was passing between his car and the one four feet in front of it. Such was plaintiff's own testimony of what she understood by his signal. The motorman had no duty to protect her against west-bound traffic which she would have to cross the moment she passed between the east-bound street cars on the south track. The motorman was in no better position to observe the west-bound traffic than she was. He was standing on the higher level of the floor of the street car while she was on the ground level, but the street car four feet in front cut off his range of vision towards the east just as effectively as it did hers. Therefore some instruction formulated to include that point should have been given as requested. The instruction which the court did give was to the effect that it was the duty of plaintiff to look and listen for the oncoming west-bound street car, and if she failed to do so she would be guilty of negligence; but that she would not be guilty of contributory negligence if the motorman of the east-bound street car signaled her to proceed across the street and if she relied upon such signal under the belief that there was no danger from an approaching west-bound car, unless such a danger was obvious to a prudent person. This instruction was based on the assumption that the motorman who signaled plaintiff had some duty to look out for pedestrians like plaintiff at that street intersection. His duty was to operate his own street car in a proper way so as not to injure pedestrians or other traffic having the same right to use the street as the defendant corporation. He had no duty to protect her against injury from other street cars on parallel tracks. The defendant company could not confer such authority and responsibility upon its motormen. Appellee would answer this point by directing attention to the fact that the motorman's authority was not denied under oath in defendant's answer. There was no allegation that the motorman had authority to direct street-car traffic or authority to signal this plaintiff that she could cross the street in safety. It would have been a usurpation of the police powers of the city government itself for defendant to have authorized its motorman to undertake that duty. The city had its own traffic officers to perform that function, and while plaintiff could not locate that functionary when she wished to cross the street he was

on duty nevertheless. According to his testimony he was helping to push a stalled motor car off the sidewalk lane at the time of the accident.

This court deems it necessary to hold that the instructions given and refused touching plaintiff's right to rely on the signal given her by the motorman on the east-bound car on the south track as an assurance that she was in no danger of being struck by a west-bound car on the north track were erroneous and prejudicial error.

That conclusion does not quite dispose of this appeal, however, since plaintiff's own testimony and the special findings of the jury, particularly Nos. 3, 9 and 11, raise the question whether she was guilty of contributory negligence. The trial court instructed the jury that it was plaintiff's duty to look and listen for an oncoming west-bound car before attempting to cross the north track, and that her failure to do so would be contributory negligence unless defendant's motorman on the east-bound car standing on the south track gave her a signal to cross, and that a reasonably prudent person would be expected to rely on such signal. As we have seen, she had no right to rely on such signal to such an extent. The remainder of the instruction was a fair statement of pertinent law. It must be borne in mind that there was another street car on the south track about four feet in front of the car being operated by the motorman who signaled to plaintiff. She had to step behind that other street car in order to get upon the north track where she was immediately struck by the west-bound car. Time and again this court, and courts generally, have declared that it is negligence to undertake without due caution to cross a street upon which there is a double street-car track by passing behind a standing street car which cuts off the view of a street car or other vehicle which may be coming from the other direction. In *Railway v. Ryan*, 69 Kan. 538, 77 Pac. 267, it was said:

"Where, upon the trial of an action for personal injuries, plaintiff testified that she alighted from an east-bound street car and passed back of it and to the northward upon a parallel track four feet distant on which cars traveled in an opposite direction, without looking for an approaching car, and sustained injury, and that by looking eastward along the space between the parallel tracks, after passing by the end of the standing car, she could have seen an approaching car for a distance of two blocks, it is held that it is error to overrule a demurrer to plaintiff's evidence." (Syl.)

The only difference between that case and the one at bar was that here plaintiff came as a pedestrian from the sidewalk to pass

behind the street car, while in the Ryan case she alighted from the car and then stepped behind it. In principle the cases do not differ in the slightest degree.

*Marple v. Railway Co.*, 85 Kan. 699, 118 Pac. 690, was an action by a widow for the death of her husband who, after passing eastward behind a south-bound street car, was fatally injured by another street car moving northward. This court said:

"The all-important question relates to his conduct after he had passed in the rear of the south-bound car and reached the space between the tracks. There that car could not interfere with his view, which was them unobstructed, as the jury found. If he then saw the oncoming north-bound car, or in the exercise of ordinary care ought to have seen it, so near and apparently running with such speed as to make the attempt to cross in front of it dangerous in the judgment of a person of ordinary prudence in that situation, then he was negligent, and there should be no recovery for resulting injuries." (p. 702.)

In *Galloway v. Interurban Railway Co.*, 97 Kan. 110, 154 Pac. 238, the syllabus reads:

"Under the facts stated in the opinion it is held that a passenger on a north-bound street car who alighted while the car was in motion and before it reached the place for the discharge of passengers, passed around the rear end of the car and was struck by a south-bound car moving on a parallel track, was guilty of contributory negligence as a matter of law." (Syl.)

In *Ogden v. Wilson*, 120 Kan. 269, 243 Pac. 284, where the duty of a pedestrian about to cross a street is discussed, this court said:

"The general view is that a traveler is under a positive obligation to look for an approaching car before crossing a street-car track, and that no recovery can be had on account of any injury to him caused or contributed to by his omission to do so. (25 R. C. L. 1277-9; 36 Cyc. 1627; 3 Elliott on Railroads, 3d ed., § 1534; Note, 7 Street Railway Reports, 35, 36.) In the note just cited it is said: 'As a general proposition a pedestrian who crosses the tracks of a street railway company without looking for approaching cars, when he would have seen a car had he looked, is guilty of such negligence as bars a recovery for his injuries resulting from a collision with such car.' This court holds it to be negligence as a matter of law to undertake to cross a street-car track without first looking to see if a car is coming. 'That a street-car track is a warning of danger; that each track, where there are more than one, is a warning; that a car may be expected at any time, and that a pedestrian must look and listen before attempting to cross, has been said so many times that a reference to the decided cases is not necessary. The purpose of looking for an oncoming car is to avoid the danger incident to getting in front of it or so near to it as to cause a collision. (*Galloway v. Interurban Railway Co.*, 97 Kan. 110, 115, 154 Pac. 238.)" (p. 271.)

As the cause of action arose in Missouri, one of many similar Missouri decisions is worthy of note.

In *Hornstein v. United Railways Co.*, 195 Mo. 440, 4 L. R. A., n. s., 729, it was said:

"Common prudence dictates that a passenger, who alights from a street car and passes behind it in an endeavor to cross the other track, stop for a moment, until he can have an unobstructed view of the other track before he attempts to cross it; and if he fails to exercise that precaution, but proceeds at once to cross the other track without waiting for an unobstructed view, which is not at the moment available to him because the car he has just left obstructs the view, and that failure contributes to and is the proximate cause of his injury by a car which suddenly approaches at a lawful rate on the track he is about to cross; he cannot recover for his injuries, although the motorman of the car which struck him failed to give a warning signal. A failure by plaintiff to use such precaution is a failure to exercise ordinary care." (Syl. ¶ 1.)

This principle of law was recognized in *Francis v. Street Railway Co.*, 92 Kan. 626, 141 Pac. 577; *Devine v. Chicago City Ry. Co.*, 203 Ill. App. 410; *Doyle v. Boston Elevated Railway*, 248 Mass. 89; and in *Deets v. Tacoma Railway & Power Co.*, 128 Wash. 210.

Under these well-considered precedents, the plaintiff was guilty of contributory negligence as a matter of law, but the jury's special findings of fact Nos. 2, 3 and 9 lead imperatively to the same conclusion.

It therefore follows that the judgment must be reversed and the cause remanded with instructions to enter judgment for defendant.

It is so ordered.

SLOAN, J., not participating.