No. 65,527

JAY D. DAWSON, *Appellant,* v. CAROLE A. GRIFFIN, *Defendant,* and AMERICAN FAMILY MUTUAL INSURANCE COMPANY, *Appellee.*

(816 P.2d 374)

Opinion filed July 12, 1991.

*Bernis G. Terry,* of Olathe, argued the cause, and *Richard L. Roberts,* of Olathe, was with him on the briefs for appellant.

*Kevin Bennett,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee American Family Mutual Insurance Company.

The opinion of the court was delivered by

SIX, J.: This is a summary judgment case flavored by a phantom truck driver motioning another motorist into a left turn through an intersection in Olathe, Kansas. The plaintiff's insurance carrier under the uninsured motorist provision of plaintiff's policy is the defendant/appellee.

The propriety of granting summary judgment to the insurance carrier is the issue for resolution.

Jay D. Dawson filed a personal injury action against Carole A. Griffin and American Family Mutual Insurance Company (American Family). Dawson named American Family as a defendant because Griffin claimed that a phantom truck driver motioned her to turn in front of Dawson, causing or contributing to his damages. Dawson settled with Griffin, who was dismissed from the lawsuit. The trial court granted summary judgment in favor of American Family.

We find no error and affirm.

Our jurisdiction arises under K.S.A. 20-3018(c). The appeal was transferred to this court from the Court of Appeals.

### Facts

Dawson and American Family adopted the following facts:

"The Court finds that the following facts are uncontroverted and are controlling of the issues to be determined in this action:

"1. This is a personal injury action arising from an automobile accident that occurred on February 4, 1987.

"2. The collision occurred when Carole A. Griffin, allegedly operated her vehicle westbound on Santa Fe Street, and turned left onto Chester Street into the path of plaintiff's eastbound motor vehicle.

"3. Plaintiff has settled his action against Carole A. Griffin and retains solely his claim against American Family for uninsured motorist protection benefits allegedly arising from the conduct of a phantom driver.

"4. Plaintiff alleges 'an unknown phantom truck driver either caused or contributed to plaintiff's damages by his negligence with reference to the said collision in the following respects:

(a) Failure to keep a proper look-out;

(b) Negligently waving Carole A. Griffin in front of his truck; and

(c) Failure to warn.'

"5. At the intersection where the collision occurred, there are two west-bound lanes, a center turn lane and two eastbound lanes. At the time of the collision, plaintiff was traveling eastbound in the far right (curb-side) lane of Santa Fe.

"6. Just prior to the collision, Carole A. Griffin was in the innermost left-hand lane of westbound Santa Fe, preparing to make a left-hand turn onto Chester Street.

"7. At the time of the collision, a truck was stopped in the left-hand lane of eastbound Santa Fe at the Chester intersection.

"8. While waiting to make a left-hand turn, Carole A. Griffin was allegedly 'motioned' to make her turn by the driver of the alleged phantom truck. The following is reproduced from Griffin's deposition testimony at pages 9 and 10:

"'A. Well, I was going to work and I had stopped at Chester to make my lefthand turn, and there was traffic opposite me that was backed up and I had my blinker on and I was just waiting, I wasn't late or anything. I was just really going in to get some paperwork and I was just waiting for the traffic to clear, and there was a truck on the opposite side where I was that was stopped there, big green truck with big wheels, and he had motioned for me to cross and I declined. You know, I wasn't late and I thought, well go yourself, I'm not late or anything, and I was prepared to stay there however long it took for the traffic to clear and we made eye contact again. He was kind of,

I think, staring down at me, and I saw him look in his side view mirror and his rear view mirror and he motioned for me to go, like a demand, 'come on lady, you'll never get across, and I thanked him and I went, and Mr. Dawson's car was right there, just hit me, and the truck left, and—'

"9. The phantom truck was not physically involved in the collision between the plaintiff and Carole Griffin.

"10. Carole A. Griffin did not believe that the driver of the truck was intending to make a turn.

"11. After plaintiff executed a left turn from Ridgeview onto Santa Fe, he was in the righthand lane of the two eastbound lanes as he approached the scene of the collision.

"12. As plaintiff approached the scene of the collision, there was no traffic ahead of him or behind him in his eastbound lane.

"13. The traffic that plaintiff remembers seeing in the left lane of the eastbound lanes is the truck at the Chester intersection.

"14. The first time that plaintiff remembers seeing the truck, it was stopped in the left lane of the eastbound lanes.

"15. As plaintiff, intending to proceed past a truck to I-35, approached the truck, it remained stopped.

"16. As plaintiff came up to the side of the truck, a car traveling south appeared from in front of the truck. The driver's door of plaintiff's vehicle was about opposite to the rear bumper of the truck when plaintiff first saw the car involved in the collision.

"17. At the time of the collision, the automobile of Carole A. Griffin was completely in the southernmost eastbound lane.

"18. Plaintiff contacted the automobile of Carole A. Griffin right at the right front wheel.

"19. As far as plaintiff knows, the truck driver drove on and disappeared after the collision."

## Summary Judgment

The trial court sustained American Family's motion for summary judgment, concluding that the only reasonable inference from the wave by the phantom truck driver to Griffin was, "Go ahead. I'll stay here." The trial court also concluded, as a matter of law, that the phantom truck driver did not owe a duty of care to Dawson.

A party seeking summary judgment bears a heavy burden. We have repeatedly stated the rules controlling summary judgment. A recent recitation is found in *Hammig v. Ford,* 246 Kan. 70, 72-73, 785 P.2d 977 (1990).

Dawson argues that Griffin's testimony, set forth in the trial court's findings at paragraph 8, establishes a genuine issue of fact

as to whether the phantom driver assumed and breached the duty to ascertain whether it was safe for Griffin to turn. Dawson asserts that: (1) Griffin's testimony indicates the phantom truck driver looked in his side and rearview mirrors; and (2) the phantom truck driver's hand motion was in the form of a demand; consequently, summary judgment is precluded.

American Family responds that the phantom truck driver's hand motion was simply a courteous act, that Griffin's misinterpretation of the trucker's motion, as a matter of law, should not be permitted to support a contention of the trucker's negligence, and that K.S.A. 8-1527 creates a duty to yield the right-of-way to oncoming vehicles when making a left turn which may not be delegated.

### The Signaling Cases

Numerous cases have addressed the motor vehicle voluntary signal-response-accident scenario. See 90 Annot., A.L.R.2d 1431. Dawson relies upon the oft quoted phrase of Justice Cardozo: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275 (1922) 23 A.L.R. 1425.

Courts that have recognized a duty have required the plaintiff to show that the signal was intended to mean it was safe to proceed rather than merely an intention to yield the right-of-way out of courtesy. In determining whether the signaling was intended to mean that it was safe to proceed, *i.e.*, no other cars were approaching in the crossed lanes, courts have looked at the signaler's ability to ascertain whether it was safe to proceed. *Kerfoot v. Waychoff*, 501 So. 2d 588, 589 (Fla. 1987); *Perret v. Webster*, 498 So. 2d 283, 285 (La. App. 1986).

During oral argument, Dawson's counsel indicated his "best case" was *Perret*, 498 So. 2d at 286. In *Perret*, the Louisiana Court of Appeals upheld a jury verdict finding a signaling driver liable for injuries sustained by a third person (Perret) when the signaled driver heeded the signal and collided with Perret.

In *Perret*, the question of whether the signaling driver assumed a duty to determine if it was safe to proceed was allowed to go to the jury. There was a question of fact whether the signaling

driver was in a position to ascertain whether it was safe to pro-
ceed. A passenger in the bus provided independent testimony
that the signaling bus driver looked in his side view mirror.

According to the passenger, who was seated behind the driver,
the bus stopped for a few minutes at the corner of DeGaulle (the
street the bus was on) before turning onto Sandra (the side street
defendant Webster was on). While there, the bus driver signaled
a "maroon colored car" (the Webster car) to go ahead. This act
took a few minutes, however, because the driver did not im-
mediately move forward and, consequently, Kennedy (the bus
driver) made several more motions with his head and hand sig-
naling Webster to proceed. Webster testified that the bus driver
motioned Webster to continue across DeGaulle in order for the
bus to turn to the right onto Sandra.

American Family relies primarily on *Harris v. Kansas City
Public Service Co.*, 132 Kan. 715, 297 Pac. 718 (1931); *Kerfoot
v. Waychoff*, 501 So. 2d 588; *Government Emp. Ins. Co. v.
Thompson*, 351 So. 2d 809 (La. App. 1977); and *Van Jura v.
Row*, 175 Ohio St. 41, 191 N.E.2d 536 (1963).

In *Kerfoot*, the Florida Supreme Court cited numerous "signal"
cases and stated:

> "We do not accept petitioner's contention that the trend is to impose
> liability on the signaling driver. We read the cases to mean that whether
> liability is determined as a matter of law is an issue resolved case by case,
> based on unrefuted facts of the vehicles' positions, the parties' conduct, and
> a reasonable interpretation of the signal under the circumstances.
>
> "In the instant case, the signaling driver, Severson, was in an almost
> impossible position to determine if the adjacent lane was clear of motor
> vehicles. Severson's own lane was full of traffic, and Kerfoot was approaching
> from the rear in an adjacent lane. The turning driver, in the instant case,
> was in fact facing the oncoming traffic. Under these facts, Severson, as the
> signaling driver, could not determine the status of traffic in the outside
> northbound lane." 501 So. 2d at 589.

The *Kerfoot* court limited its holding to the facts presented: "Our
holding in this case is limited to its circumstances and should
not be broadly construed to hold that drivers who give gratuitous
signals to other drivers cannot be guilty of negligence for causing
an accident." 501 So. 2d at 590.

In *Harris*, a 1931 opinion of this court, a pedestrian, Harris,
was injured when she was struck by a streetcar at the intersection

of Twelfth and Walnut in Kansas City, Missouri. Walnut runs north and south, and Twelfth runs east and west. Double streetcar tracks were on both streets. She was on the southwest corner of Twelfth and Walnut and desired to cross to the north side of Twelfth. Several streetcars were standing on the south railway of Twelfth Street headed eastward. One of these cars was projected into Walnut. Behind this car, a second car was standing so that its front was in the sidewalk lane. A motorman on the second car nodded his head and beckoned Harris to cross. She started to cross, and passed in front of the second streetcar, behind the first. When she stepped beyond these two streetcars, she was struck by another streetcar headed west on the north track. Harris alleged the motorman was negligent by failing to warn her of the approaching westbound streetcar. The jury found for Harris. We reversed, stating:

"His [the motorman's] signal to plaintiff could mean no more than an assurance that he would not start his car and catch her while she was passing between his car and the one four feet in front of it. *Such was plaintiff's own testimony of what she understood by his signal.* The motorman had no duty to protect her against west-bound traffic which she would have to cross the moment she passed between the east-bound street cars on the south track. The motorman was in no better position to observe the west-bound traffic than she was." 132 Kan. at 718.

Harris also relied on the negligence of the motorman in the westbound streetcar that struck her. We acknowledged the westbound car's negligence but held Harris contributorily negligent as a matter of law, stating:

"Time and again this court, and courts generally, have declared that it is negligence to undertake without due caution to cross a street upon which there is a double street-car track by passing behind a standing street car which cuts off the view of a street car or other vehicle which may be coming from the other direction." 132 Kan. at 719.

*Government Emp. Ins. Co. v. Thompson,* 351 So. 2d 809, involved a fact situation similar to the case at bar. Thomas was stopped in the inside southbound lane of a four-lane street waiting for traffic to clear so that he might turn left onto an intersecting street. Decuir was stopped in the inside northbound lane of traffic on the four-lane street. The northbound inside lane was backed up due to a stoplight farther north. Decuir made room and sig-

naled Thomas to turn left. As Thomas did so, he was struck by a vehicle operated by Prejean proceeding in the outside north-bound lane. Pejean's suit against Decuir was dismissed. On appeal, Prejean argued that Decuir was negligent in leading Thomas to believe it was safe to turn. With little analysis the Louisiana Court of Appeals disagreed, stating:

"Mr. Decuir's signal was intended to give Mr. Thomas permission to pass in front of Mr. Decuir's stopped truck. Mr. Thomas cannot be relieved thereby of his obligation to keep a proper lookout for oncoming traffic in other lanes of traffic. His misinterpretation of Mr. Decuir's courteous gesture cannot serve to render Mr. Decuir guilty of negligence proximately causing the ensuing accident." 351 So. 2d at 810.

*Kerfoot* and *Harris* considered whether the signaler was in a position to ascertain if it was safe to proceed. Each decision noted that the signaler was not in a position to make this determination or, at least, in no better position than the person signaled.

The collision facts of *Van Jura v. Row*, 175 Ohio St. 41, are similar to the collision facts in the case at bar.

In *Van Jura*, Row was driving south on the inside lane of a five-lane street (two southbound lanes and three northbound lanes). Row intended to make a left turn across the three north-bound lanes to go to a restaurant. The inside northbound lane was clear. The traffic in the center northbound lane was backed up to a stoplight farther north. The driver of a large truck stopped just south of where Row wanted to turn and motioned Row to proceed. The truck obstructed Row's ability to see the northbound outside (curb) lane. Row collided with Bires, who was northbound in the outside lane. The truck driver was not a party to the action and his identity was unknown. The jury was instructed that it could find the sole proximate cause of the accident to be the act of the truck driver who, having the right to proceed, nevertheless stopped and motioned a left turning motorist to pass in front of him. The jury found for the defendants. On appeal, this instruction was held to be erroneous. 175 Ohio St. at 43, 45.

The Ohio Supreme Court noted that this traffic situation occurs everyday. The court framed the issue as follows: "Can one who is waiting to make a left turn depend upon the action of another motorist and absolve himself from liability for injury committed upon a party, by showing that he was invited to proceed in his

left turn by such other motorist, who, at that time, had the right to proceed uninterruptedly in the direction in which he was headed?" 175 Ohio St. at 43. The *Van Jura* court quoted the following Ohio statute: " 'No person shall turn a vehicle . . . from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway . . . .' " 175 Ohio St. at 44. The court held that the conduct required by the statute may not be delegated to another. 175 Ohio St. at 45.

American Family urges us to adopt the *Van Jura* rationale and cites K.S.A. 8-1527, which states:

*"The driver* of a vehicle intending to turn to the left within an intersection or into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." (Emphasis added.)

American Family argues that K.S.A. 8-1527 creates a nondelegable duty on the driver to yield the right-of-way. Thus, Griffin's sole negligence caused Dawson's injuries. We agree that the duty imposed by K.S.A. 8-1527 cannot be delegated; however, *Van Jura* is not a persuasive precedent for a total resolution of the instant case. The signaling truck driver in *Van Jura* was not a party in the lawsuit. Van Jura, the plaintiff, was asserting no claim against the phantom truck driver. Row, the sole defendant, was attempting to absolve himself from all liability by delegating his offensive left turn to the unidentified nonparty truck driver.

In the case at bar, there was no verbal communication. In our view, any reliance on the alleged hand wave as a guaranty of safety, in the instant case, was unjustified as a matter of law. Perhaps the trucker meant one thing and Griffin assumed another. We will never know.

What we do know is this: Griffin had a nondelegable duty to yield to oncoming traffic while making a left turn; and the only reasonable and safe thing to assume from a hand wave is, "*I* won't hit you."

Other cases will present other facts and in a comparative negligence state, such as ours, each case will necessarily stand or fall on those unique facts. There may be a case where more can

be safely understood from a hand wave. This, however, is not such a case.

Affirmed.

ABBOTT, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.