# CHARLESTON.

LONNIE COOK *v.* THE VIRGINIAN RAILWAY COMPANY.

Submitted October 14, 1924. Decided October 21, 1924.

1. MASTER AND SERVANT—*Action for Personal Injuries Resulting From Use of Cold Chisel Held Governed by Common Negligence in Action for Injuries From Use of a Master's Simple Tool.*

    A cold chisel provided by a railroad company for the use of its section hands in cutting in two steel rails for repairing the track, is not within the class of equipment required by the second branches of sections 8069 and 8070 of Barnes' Federal Code, but is a simple tool, and actions for personal injuries sustained in the use thereof are governed by the rules of the common law applicable thereto; and it is necessary to show negligence on the part of defendant. (p. 423).

2. SAME—*Employee's Injury from Use of Simple Tool not Evidence of Employer's Negligence; Employer Need not Keep Common Tool in Repair for Competent Workmen.*

    The fact that such a common tool as a cold chisel is battered down in its use by blows from the hammer, and that a sliver or piece of steel has been thrown off and penetrated the body of plaintiff, does not constitute any evidence of negligence on the part of the master in respect thereto. When such a reasonably safe tool has been provided, an employer is not required to follow it up and by inspection and tests keep it in repair, when the workmen using it are as competent as the master to observe its condition and repair it or call it to the attention of the master. (p. 424).

3. SAME—*Dangers From Use of Simple Tool Assumed by Employee.*

    Dangers incident to the use of such a simple tool as a cold

chisel are of the class assumed by an employee in accepting employment.  (p. 426).

4.  SAME—*Master Under no Duty to Instruct Mature Experienced Servant in use of Simple Tool.*

The master is under no duty to warn or instruct a servant of mature years and with experience in the use of such a simple tool, when he is as competent to judge as the master how to make use of the instrument, and where no amount of instruction or warning could possibly aid him in avoiding the dangers incident to its use.  (p. 426).

5.  SAME—*Burden on Plaintiff to Show Master's Negligence in Case of Injury From Use of Simple Tool; Where From Evidence Injury From Simple Tool Might Have Occurred Other Than Alleged, Master's Negligence not Established.*

In such an action the burden is upon the plaintiff to show the negligence alleged, and where on the evidence it is just as plausible that the piece of steel doing the injury may have come from the steel rail being cut, or from the hammers employed, as from the cold chisel, the plaintiff has not made out a case of negligence against the master in providing the cold chisel alleged to have done him the injury.  (p. 427).

6.  PARENT AND CHILD—*Miner Employee Unless Emancipated by Father, Cannot Recover for Loss of Wages During Minority.*

An employee under age, unless emancipated by his father, cannot recover for loss of wages earned during his minority; his earnings during that time belong in law to his father.  (p. 428).

LITZ, JUDGE, absent.

Error to Circuit Court, Wyoming County.

Action by Lonnie Cook against the Virginian Railway Company.  A verdict for plaintiff was set aside, and new trial awarded, and plaintiff brings error.

*Affirmed.*

*J. Albert Toler*, for plaintiff in error.

*Brown, Jackson & Knight, Williams, Loyall & Tunstall* and *W. C. Plunkett, M. P. Howard* and *Martin & Wingfield*, for defendant in error.

MILLER, JUDGE:

In an action for personal injuries plaintiff obtained a ver-

dict for $4,000.00. After a motion by defendant to set aside the verdict because contrary to the law and the evidence, plaintiff moved the court to allow him to remit the verdict to the sum of $1,500.00, which latter motion the court overruled; and being of opinion that plaintiff, on the case presented, was not entitled to any recovery, the court set aside the verdict and awarded the defendant a new trial. To this judgment the plaintiff obtained the present writ of error, assigning as one of the grounds of error the refusal to allow the remittitur; and the defendant has assigned numerous grounds of cross-error committed on the trial.

The declaration alleges that defendant is an interstate carrier, and that when injured plaintiff was engaged in repairing the track of defendant employed in interstate commerce.

Two breaches of defendant's alleged duty towards plaintiff are alleged and relied on for recovery. First, the duty to warn him of any and all dangers and hazards incident to the performance of his work as an employee, not obvious and which could not have been realized by him on account of his age and inexperience or otherwise, and to instruct him as to the best methods and manner of performing his work and avoiding dangers and hazards incident thereto: Second, the duty, neglected, to provide him with reasonably safe, strong and sufficient tools and appliances with which to do his work, and generally to use all due and reasonable care to prevent him from being injured while engaged in the performance of his work.

By way of specification of the breaches of these duties, it is averred that plaintiff was required by the section foreman to assist certain other employees in cutting in two a large steel rail to be used in repairing one of the tracks of defendant's main line, and that in the performance of this work it was necessary to make use of a very hard steel cutter, commonly called a cold chisel, the sharp edge of which was held upon and against the rail by one of the workmen while it was struck by others with heavy steel hammers; wherefore it was necessary that said chisel should be in good, safe, sound and solid condition, and particularly the end thereof that was to be struck with the hammers, so as to avoid injuring those using the same, by pieces flying therefrom when struck as afore-

said; that plaintiff was young and inexperienced, and the cold chisel so furnished and provided him for the performance of said 'work was battered, twisted and split on the end which was struck with the hammers, and was in an unsafe, unsound and dangerous condition, as was well known to defendant, and unknown to the plaintiff, who was young and inexperienced; by reason whereof, while so engaged, he was struck by a piece of fragment of steel which flew from said chisel, and which penetrated his right shoulder and lodged against the bone thereof, resulting in a serious and painful wound and injury, on account of which he was obliged to go to a hospital and there to remain under the care and treatment of doctors for a long time, and to suffer great physical and mental pain and anguish, and to pay out and expend large sums for doctor bills and medicinal attention, and has thereby sustained permanent injury, and was for a long time prevented from laboring at his usual and customary work, etc. Wherefore, by virue of the Federal Employers' Liability Act of the Congress of the United States an action had accrued to him to demand and have of the defendant damages to the amount of $5,000.00.

The only plea was not guilty, and issue was joined on that plea.

We observe that the federal statute, sections 8069 and 8070, Barnes' Federal Code, limits the liability of common carriers to their employees to "injury or death resulting in whole or in part from the negligence of any of its officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." As was said in *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501: "This clause has two branches: the one covering the negligence of any of the officers, agents or employees of the carrier, which has the effect of abolishing in this class of cases the common law rule that exempted the employer from responsibility from the negligence of a fellow employee of the plaintiff; and the other relating to defects and insufficiencies in the cars, engines, appliances," etc. And in the same connection it is said: "But, plainly, with respect to the latter as well as the former ground of liability,

97 W. Va.

it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence.'' In our own cases of *Hull* v. *The Virginian Railway Co.*, 78 W. Va. 25, and *Culp* v. *The Virginian Railway Co.*, 77 W. Va. 125, we have followed necessarily this construction of the statute.

In the case before us no defect in the equipment required by the second division of the statute is alleged or proven, unless the alleged defect in the cold chisel be properly classed thereunder. We do not think it is. It is not even included in the language ''or other equipment.'' *N. Y. N. H. & H. R. Co.* v. *Vizvari*, 210 Fed. Rep. 118, 120, and cases cited. So that the defendant company violated no statutory provision for the safety of its employees in furnishing or permitting the use of the chisel which is alleged to have caused the injury to plaintiff.

So that we are obliged to decide the question presented here by the rules of the common law. And the defendant, before recovery can be had under the provisions of the statute, must be shown to have been derelict in some duty owed to plaintiff. *Seaboard Air Line* v. *Horton, supra* and cases cited.

The question we have presented then is, was negligence shown in providing the particular chisel complained of by plaintiff? It was, as the evidence shows, a common, ordinary cold chisel, of the kind admittedly used in operations like the one described in the declaration and in the evidence. The claim is that the chisel was battered, burst, and split on the end which was struck by the hammers, and was in an unsafe, unsound and dangerous condition; as a result of which fragments flew therefrom, one of which struck plaintiff causing his injuries. The chisel was not produced in evidence, and there was no evidence of its condition except that which a tool of that kind would naturally acquire in the uses to which it was put. It is not pretended that this particular chisel was not of the kind and quality generally used. Just how split, whether mashed down by the blows or otherwise, does not appear. The implication of plaintiff's evidence is that the defects consisted mainly of the battered condition in which

the tool had become by the use of it; that in the place of being soft, it should have been hard, so as to resist the blows. In the federal case referred to, one of the witnesses, an expert, said that if hard its condition would have been evidence of its unsuitableness. Such tools are properly made soft on the head so that they will batter down, and not so hard that pieces are liable to sliver off and injure the workmen. Even then, says one of defendant's witnesses, pieces are liable to fly off, but fall down in the direction of the blows, and that it is unusual for them to fly upwards. This being so, the battered condition of the tool was no substantial evidence of its defect, or negligence on the part of the defendant in providing the same or permitting its use, nor any evidence of negligence in not repairing it.

The rule is firmly established by a long line of decisions, including some of our own, that the master is under no obligation to inspect and observe the condition of simple tools of this kind, the condition of which is constantly changing in the use; and we find precedents for the application of this rule in the use of tools like cold chisels in operations like that described in this case. The cases on this proposition are *Smith* v. *United Fuel Gas Co.*, 91 W. Va. 52; *Martin* v. *Carter Coal Co.*, 75 W. Va. 653; *Southern Railway Co.* v. *Burford*, 120 Va. 157, (a cold chisel case). In cases from other courts we find *Martin* v. *Highland Park Mfg. Co.*, (N. C.), 83 Am. St. Rep. 671, where the plaintiff claimed damages for injuries sustained from a piece of iron cast off a hammer in driving an iron key into a loom. It was said a hammer is a simple tool, not a piece of machinery which requires any attention whatever to keep it in order; it can not get out of fix unless the handle breaks. Of course, if the master furnishes a tool known to be defective, or which inspection and test ought to disclose, the rule might not be applicable. But when a proper tool of this simple character is provided, and changes in its condition from day to day occur, by the ordinary and regular use thereof, the master is under no obligation to follow it up and see that its condition is always safe, when the employee is just as competent as the master to see and remedy the defects, if any, or call it to the attention of the master, as was done in *New York, N. H. & H. Ry. Co.* v. *Vizvari, supra,*

In *Mulligan* v. *Crimmins,* 75 Hun 578, 27 N. Y. Sup. 819, cited in the North Carolina case, it was held that the fact that a piece of metal was forced from a chisel struck with a blow from a hammer did not furnish even *prima facie* evidence of negligence. In *Wachsmuth* v. *Shaw Electric Crane Co.,* 118 Mich. 275, it was held that the duty of the master to inspect does not extend to tools of that character. To the same effect we find *Herricks* v. *C. & E. I. R. R. Co.,* 257 Ill. 264; and so also the case of *Koschman* v. *Ash,* 98 Minn. 312. The same rule was followed in *Amer. Car Found. Co.* v. *Fess,* 53 Ind. App. Rep. 136; and in *Golden* v. *Ellis,* 104 Me. 177. In the latter case it is said: "The duty of inspection, by an employer, of the appliances used by his employees, does not extend to the small and common tools in every-day use, of the fitness of which the employees using them may reasonably be supposed to be competent to judge." The court in *Twombly* v. *Cons. Electric Light Co.,* 98 Me. 353, 64 L. R. A. 551, properly refused to apply this rule in the case of a defective ladder. The only concrete case we have found where the court, though acknowledging the general rule applicable to simple tools, refused to apply it, is the case of *New York, N. H. & H. Ry. Co.* v. *Vizvari, supra.* One judge dissented. This case seems to stand alone and is not in accord with the cases cited, or binding on us or constituting persuasive precedent.

But was negligence shown in defendant's failure to warn or instruct plaintiff? If there was any negligence shown, the statute gives the remedy. The rule laid down in *Seaboard Air Line* v. *Horton, supra,* and in the other cases cited, including our own, is that dangers incident to the use of simple tools in the manner described, and by section hands employed on a railroad like plaintiff, are assumed upon entering such employment. Such was the ruling of this court in *Smith* v. *United Fuel Gas Co., supra.* And the same principle was allowed to control our decision in *Martin* v. *Coal Co., supra.* The evidence shows that slivers and pieces of iron are frequently thrown off of tools which no foresight or prudence on the part of the master can prevent; wherefore the dangers incident to the use of such tools are

those which an employee necessarily assumes in accepting employment. *Seaboard Air Line* v. *Horton, supra; Seldomridge* v. *C. & O. Ry. Co.,* 46 W. Va. 569; *Smith* v. *United Fuel Gas Co., supra.* The plaintiff in this case had been employed by defendant in this service from the spring of 1917 to June 1921, when hurt. He had done the same kind of work during that time, including the cutting of steel rails, which was a very simple operation, requiring no skill or particular knowledge. He had assisted in this operation three or four times before and knew just as much about it as his master or a superior employee could have known. No warning or instruction by the master could have aided him in warding off the danger necessarily incident to his employment.

In *Southern Railway Co.* v. *Burford, supra,* it was said that a servant assumes the risk of open, obvious dangers of which he had knowledge, or where his opportunity for knowledge is so complete as to leave no room for doubt that he either knew or ought to have known all about them. And in our own case of *Smith* v. *United Fuel Gas Co.,* cited, we held that dangers incident to the use of a cold chisel in setting metal nuts on bolts was one of the obvious and ordinary risks assumed by an adult servant, even though he is lacking in experience in the particular work done with such implements. Where the operation is so simple and the danger so obvious, there is no obligation to warn. No warning could have prevented the accident. *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726. A master is not required to give a servant warning of dangers that can not reasonably be anticipated. *Smith* v. *United Lumber Co.,* 71 W. Va. 749. We think the evidence shows that the chisel employed in this case was in a reasonably safe condition for use. And the facts do not show culpable or actionable negligence on the part of defendant.

Moreover, it does not appear that the piece of steel which caused the injury was cast from the chisel. It was not removed from plaintiff's shoulder and placed in evidence. For aught that appears; it may have come, and as likely did come, from the hammer or steel rail, as from the chisel. There being two other theories just as plausible as the one, the

burden was upon plaintiff to show by a preponderance of the evidence that he sustained his injuries from a defect in the chisel. *Hull* v. *The Virginian Railway Company, supra; Culp* v. *The Virginian Railway Company, supra.*

One of the grounds urged for setting aside the verdict is that it was excessive. On the evidence before the court and jury, we are persuaded that it was. Plaintiff lost only about eight days time on account of his injuries. The piece of steel entered his shoulder, and he was only disabled for a few days. He claims to have suffered pain, and that he has continued to do so ever since. He seems to have felt that his verdict was too large, and ought to be set aside on that ground, as he so moved the trial court. As the evidence may be different on a new trial awarded, we express no opinion on this question.

The defendant has assigned as cross-errors, the refusal of the court to give to the jury eight several instructions. The first was a direction to find for the defendant. The views expressed on the merits of the case made this instruction proper, and we think the court must have so concluded when setting aside the verdict, for in the order the opinion was given that plaintiff was not entitled to recover anything. Instructions numbers two, three, four, five, seven and eight contained legal propositions applicable to the facts in the case, and in harmony with the legal principles on which the merits of the case have now been adjudged, and should have been given.

Instruction number six would have advised the jury that the plaintiff in no event could recover from the defendant anything for the loss of wages during his minority. The record shows that when injured June 27, to July 5, 1921, while totally disabled, he was still under age. He claims to have been partially disabled for two months thereafter, and to some extent still continues to be so, though he seems to have been at work for defendant and others, earning about the same wages continuously since then, earning from $2.74 to $3.88 per day. He thereafter lost little, if anything, in the way of wages on account of the injuries, except for the eight days he was totally disabled. He reached his majority in January 1923. It is settled law that one under age, un-

less emancipated by his father, can not recover wages earned by him during his minority. Until he reaches his majority, his wages belong in law to his father. *Comer* v. *Ritter Lumber Company,* 59 W. Va. 688. Instruction number six should also have been given.

Instruction number nine, we think, was properly rejected. Its purpose was to deny plaintiff a verdict if the rail on which he was working when injured, though being prepared for the interstate track, was not in fact put into that track, but was only intended for future use therein. We do not think that the fact that the rail had not yet been installed when plaintiff was injured is material.

Our conclusion is to affirm the judgment.

*Affirmed.*