WANDA CARROLL ARMSTEAD, *an Infant, Etc.,* WHO SUES BY RAYMOND ARMSTEAD, HER NEXT FRIEND

*v.*

HENRY H. HOLBERT, OTHO SCHOOLCRAFT AND CONLON BAKING COMPANY, *a Corporation*

(No. 12076)

Submitted April 19, 1961.       Decided July 3, 1961.

BERRY, GIVEN, JUDGES, dissenting and concurring:

*Lane & Preiser, John J. Lane, Stanley E. Preiser,* for plaintiff in error.

*Simpson, Sloan & Baughan, Spencer P. Simpson, Jackson, Kelly, Holt & O'Farrell, W. T. O'Farrell, Robert K. Kelly,* for defendants in error.

BROWNING, JUDGE:

Plaintiff, Wanda Carroll Armstead, was seriously injured on April 7, 1957, when she was struck by an automobile driven by the defendant, Henry H. Holbert. Plaintiff and a friend were proceeding in a northerly direction along the west side of U. S. Route 119, a two-lane highway, in the Town of Clendenin when they came to the intersection of Elm Street. Traffic was stopped in the west lane of Route 119, the defendant, Otho Schoolcraft, stopping his bread truck, owned by the defendant, Conlon Baking Company, a corporation, approximately five feet from the southwest corner of Elm Street. As plaintiff and her friend reached the

corner, their desire to cross Route 119 being apparent, the defendant, Schoolcraft, "looked towards Elk River and I also looked in my rear view mirror" and then made a waving motion with his right hand from right to left. The girls paused 10 to 15 seconds, crossed in front of Schoolcraft's vehicle and into the other lane of traffic where they were struck by Holbert's automobile approaching from the opposite direction. There is a conflict in the evidence as to whether the girls were running or walking. The girls, while admitting that they knew they should have looked in the direction from which the Holbert automobile was coming, after reaching the center of the road, did not remember whether they did so, stating that "we took it for granted that when he motioned the road was clear." The defendant, Schoolcraft, had been delivering bread for his employer, Conlon Baking Company, to Spencer, West Virginia, and was returning to its plant in Charleston along his customary route, and with one more stop or call to make, at the time of the accident. The defendant, Holbert, testified that: The first time he saw the girls was when they came from behind one of the cars stopped in the opposite lane of traffic, when he was twenty or twenty-five feet from them; he was proceeding at approximately twenty miles an hour; the girls ran an additional six or seven feet before he struck them; and, they were struck slightly to the right of the center of his automobile. The Holbert automobile left skid-marks twenty-seven feet in length. Plaintiff and her friend were thirteen years of age at the time of the accident.

The plaintiff instituted her action against Holbert, Schoolcraft and Conlon Baking Company, in the Common Pleas Court of Kanawha County, and a jury returned a verdict in her favor, and against all three defendants, in the amount of $65,000.00. Motions to set aside the verdict in behalf of the defendants were overruled and judgment was entered thereon.

During the course of the trial, plaintiff introduced the testimony of a gynecologist who testified that, due

to encroachment of the pelvic canal, plaintiff, in giving birth, "the probability * * * is that she may have to be delivered by Caesarean section." On cross-examination, in response to questions as to the degree of certainty whether such would be the case replied:

"A. We can't say with any certainty because I don't know the structure or the type of man this girl is going to marry. * * * [if she marries a man of large stature] * * * she will have a good size baby and we can state with a pretty good probability if she has a large infant, I will tell you she will have a tough time.

"Q. And of course no one knows whether she will bear large children or not?

"A. No. We can't prognosticate that.

"Q. That is in the realm of plain speculation?

"A. Only the Lord knows that."

A motion by the defendants, Schoolcraft and Conlon Baking Company, to strike the doctor's testimony on the ground that it was too speculative was overruled.

On individual petitions therefor, writs of error were granted by the Circuit Court of Kanawha County to the Court of Common Pleas of that county and on March 2, 1960, the circuit court, indicating the reason therefor in a written memorandum filed and made a part of the record in the case, reversed such judgments and remanded the case for a new trial as to all defendants, to which judgment this Court granted a writ of error on October 3, 1960.

Errors assigned in this Court are the actions of the circuit court in holding that: (1) Schoolcraft was not acting within the scope of his employment with the defendant, Conlon Baking Company, in giving the signal to cross the highway and that Conlon Baking Company was entitled to a directed verdict on the evidence; (2) the admission of the testimony of Dr. Seltzer was too speculative and therefore prejudicial error as to Schoolcraft; (3) the defendant, Holbert, was likewise prejudiced by the admission of Dr. Selt-

zer's testimony, and was entitled to have the judgment as to him reversed on that ground, even though he had not assigned such as error, since his rights were interdependent with those of Schoolcraft; and (4) in indicating, though not passing upon the point directly, that the argument of plaintiff's counsel on the question of damages was improper wherein counsel argued, and placed on a blackboard, figures representing a per diem sum as a basis for an award to the plaintiff of damages for pain and suffering.

Upon the holding of this Court in the case of *Crum v. Ward, et al.,* 146 W. Va. 421, 122, S. E. 2d 18, decided at this term of the Court, the judgment of the Circuit Court of Kanawha County, in its capacity of an intermediate appellate court, reversing the judgment of the Court of Common Pleas of Kanawha County, setting aside the verdict for the plaintiff and granting the defendants a new trial, must be affirmed. The 5th Syllabus Point of that case is controlling. It reads: "In an action for damages for personal injuries, an argument of counsel to a jury based on a mathematical formula, or a fixed-time basis, suggesting a money value for pain and suffering, is not based on facts, or reasonable inferences arising from facts, before the jury, and constitutes reversible error." This question was properly raised by motion of counsel for Conlon and Schoolcraft prior to the beginning of final arguments by counsel in which he objected "to the placing on the blackboard of any figures concerning loss of wages, life expectancy, pain and suffering and other attempts to break down pain and suffering into dollars and cents." Counsel for the plaintiff then stated: "I want the court to rule on that." "The court: overruled. [exception]." After the final argument of the counsel for the plaintiff, Mr. O'Farrell, counsel for Conlon and Schoolcraft, moved the court "to declare a mistrial" upon that and other grounds and the court overruled his motion, to which action he excepted.

It is not necessary to re-cite the extensive authority cited in the *Crum* case but reference is here made to

the majority opinion by Judge Leslie E. Given and the dissenting opinion for excellent dissertation on both sides of this controversial issue. President Frank C. Haymond wrote the dissenting opinion, in which the writer joined.

Since this case is going back for a new trial, some of the other assignments of error will be briefly discussed. This Court is in agreement with the reasoning of the Circuit Court of Kanawha County that the testimony of Dr. Seltzer, being speculative, was inadmissible and that to permit the jury to hear it was reversible error as to all defendants even though there was no specific objection to it by the defendant Holbert. A majority of the Court is also in agreement with the circuit court, wherein it found, and which finding is cross-assigned as error in this Court, that the statement of counsel for the plaintiff in the presence of the jury that a "fund" had been set up to take care of any verdict that might be returned against Holbert, was not reversible error, inasmuch as such statement was provoked by the argument of counsel for Holbert from which a clear inference could be drawn that Holbert was not covered by insurance. The remarks of both counsel were irrelevant to the issue of liability and it is hoped that this error will not recur when this case is re-tried. It would seem that the time has come when counsel for both plaintiffs and defendants should refrain from bringing this immaterial and prejudicial question into the trials of personal injury and fatal cases resulting from the operation of motor vehicles. See *Graham v. Wriston,* 146 W. Va. 484, 120 S. E. 2d 713.

It has not been considered necessary in this opinion to state in detail the injuries suffered by plaintiff and the conclusions of the medical witnesses as to the permanency thereof and, since there is to be a new trial, perhaps the excessiveness of the verdict should not be a subject of discussion in this opinion. However, a majority of the Judges of this Court are in agreement with the circuit court that while "* * * the

verdict was probably too large, * * *'', it could not be said to be excessive as a matter of law and would not be set aside upon the ground of excessiveness alone.

It is the view of this Court that the testimony in this case presented jury questions as to the liability of all of the defendants and as to the contributory negligence of the plaintiff. The circuit judge in his opinion found that jury questions were presented as to all of these issues except as to Conlon and he found it was reversible error not to direct a verdict for that defendant. The cases in this jurisdiction as well as elsewhere are multitudinous upon the question of whether the negligence of a servant in the operation of the master's motor vehicle is within or outside the scope of his employment. It is not enough, of course, to show that the act was done during the period covered by the employment. 5A Am. Jur., Automobiles, §631, et seq.; 60 C.J.S., Motor Vehicles, §437, et seq. However, in *Weismantle v. Petros,* 124 W. Va. 180, 19 S. E. 2d 594, this Court, quoting from *Jenkins v. Spitler,* 120 W. Va. 514, 199 S. E. 368, said: ''There is a rebuttable presumption that the driver of another's car is acting about the owner's business, * * *.''

We find no case in this jurisdiction, nor are we cited to any upon the precise question presented as to the liability of the defendant Conlon. There is little authority elsewhere, but Conlon relies upon *Harris v. Kansas City Public Service Co.,* 132 Kansas 715, 297 P. 718, and *Devine v. Cook,* 3 Utah 2d 134, 279 P. 1073. The circuit court cites these two cases as authority for its ruling upon the liability of Conlon. Inherent in any principle of law laid down by an appellate court are the facts in which it was conceived. These were the facts in the *Harris* case: The single defendant operated streetcars upon the streets of Kansas City, Missouri, under a franchise. The plaintiff was injured at the intersection of Walnut and Twelfth Streets, on both of which defendant maintained double railway tracks. ''On the south railway track on Twelfth Street several street cars were standing, headed eastward.

One of these cars was projected almost its full length into Walnut street. Behind it a second car was standing so that its front end was in the sidewalk lane where pedestrians should cross on the west side of Walnut. According to plaintiff's testimony, when she failed to locate a traffic policeman she happened to notice the motorman on defendant's second car. He nodded his head and beckoned to her to cross, and she started to do so. She passed the front of this second street car and at the rear of the one ahead of it. The space between these two street cars was about four feet. The moment after she passed between these two street cars and took one step beyond, she was struck by another of defendant's street cars going west. * * *'' A city traffic officer was on duty at the intersection, but at the moment plaintiff was injured, according to his testimony, "he was helping to push a stalled motor car off the sidewalk lane." The defendant was charged with negligence because of the acts of both of its motormen, "the motorman who had beckoned her" in that he did not warn her of the approaching streetcar on the west-bound track, and "the failure of the motorman on the west-bound street car to ring a bell or give other warning of his coming, and the operation of the west-bound car at a high and dangerous rate of speed." There was a general verdict for the plaintiff and the jury answered at least eight "special questions."

The trial court instructed the jury "that it was the duty of plaintiff to look and listen for the oncoming west-bound street car, and, if she failed to do so she would be guilty of negligence; but that she would not be guilty of contributory negligence if the motorman of the east-bound street car signaled her to proceed across the street and if she relied upon such signal under the belief that there was no danger from an approaching west-bound car, unless such a danger was obvious to a prudent person." The appellate court said the motorman's signal "could mean no more than an assurance that he would not start his car and catch

her while she was passing between his car and the one four feet in front of it. Such was plaintiff's own testimony of what she understood by his signal." Upon that point the court was entirely correct for the plaintiff did testify "* * * I looked up and glanced at the motorman to see that he didn't start up and catch me between those street cars and he was motioning to go on." The court said further: "The motorman was in no better position to observe the westbound traffic than she was. He was standing on the higher level of the floor of the street car while she was on the ground level, but the street car four feet in front cut off his range of vision towards the east just as effectively as it did hers. Therefore some instruction formulated to include that point should have been given as requested." The court then held that it was reversible error not to give such an instruction. It was against that background that the court made the following statement which was relied upon by Conlon and which, in substance, was carried into the 1st Syllabus Point of the case: "His [the signalling motorman] duty was to operate his own street car in a proper way so as not to injure pedestrians or other traffic having the same right to use the street as the defendant corporation. He had no duty to protect her against injury from other street cars on parallel tracks. The defendant company could not confer such authority and responsibility upon its motormen. It would have been a usurpation of the police powers of the city government itself for defendant to have authorized its motorman to undertake that duty. The city had its own traffic officers to perform that function, and while plaintiff could not locate that functionary when she wished to cross the street he was on duty nevertheless." The court then proceeded to discuss the contributory negligence of the *adult* pedestrian, apparently as against the primary negligence of the second or non-signalling motorman, and found as a matter of law that she was guilty of such negligence as contributed proximately to her injury. Actually, the jury had made such a finding,

"Special Question No. 9." being: "Did plaintiff at any time before being struck, look for an approaching car from the east? A. No." It would appear from the views stated in the court's opinion that if the signalling motorman had been a defendant he would not have been found guilty of negligence in the light of the plaintiff's clear understanding of the significance of what he meant by the signalling motion which he gave to her. If the court intended to absolve the defendant from liability on the ground that the act of the signalling motorman was without the scope of his employment it would have been easy to have said so. It would have been unnecessary to determine: (1) That the plaintiff understood from the motorman's signal that he meant only thereby that he would not "start up and catch me between those street cars."; (2) or that "the motorman was in no better position to observe the west-bound traffic than she was."; (3) or that it was reversible error not to give an instruction in behalf of the defendant with regard to the comparative vision of the motorman and the plaintiff, and the fact that the streetcar four feet in front of the motorman "cut off his range of vision towards the east just as effectively as it did hers." The only applicable syllabus point commingles both principles so that it is impossible to determine accurately upon which the case actually turned: "Street Railroads—*Injury to Pedestrian—Right to Rely on Signal from Motorman.* The motorman of a street car has neither authority nor duty to direct pedestrian traffic at an intersection of city streets on which are double railway tracks. A signal given by him to a pedestrian that she could safely cross in front of his standing car did not carry with it any assurance upon which she could rely that after passing between the front of his street car and the rear of another street car four feet ahead of it she could safely cross the parallel track upon which another street car was moving in the opposite direction."

In *Devine, et al. v. Cook and W. S. Hatch Co., Inc.,* 3 Utah 2d 134, 279 P. 2d 1073, the Devine passenger

automobile collided with the Cook passenger automobile in an intersection and actions were instituted by Devine and two female guest passengers against Cook and the Hatch Company, the latter for the alleged negligence of its tank truck driver in allegedly signalling the driver of the Cook car to enter the intersection where it collided with the Devine car. Briefly, these are the facts: Metcalf, the truck driver, and Devine were proceeding north on highway 91, which at the point of collision has four lanes, while Cook was proceeding east on 1500 South Street, a two lane highway running east and west; north-south traffic has the right of way and there are stop signs on 1500 South Street on both sides of highway 91; as Metcalf approached the intersection he gave a signal indicating his intention to make a left-hand turn into 1500 South Street, and brought his vehicle to a complete stop at the intersection; Metcalf's truck, travelling in the inner lane, passed the Devine car, travelling in the outer lane, just before he reached the intersection; noting that the Cook car was stopped at the stop sign on South Street and observing that his truck and another truck following him, and belonging to the same company, could not complete a left-hand turn into South Street until the Cook car had cleared the street, as stated in the opinion "in some manner which is not entirely clear upon the evidence, signalled or motioned the Cook car to proceed."; and thereupon the Cook car proceeded east across highway 91, the Devine car continued to proceed north and they collided in the intersection. The three actions were apparently tried to a single jury which returned a verdict against all three plaintiffs and in favor of both defendants. The judgment was reversed and the verdict set aside as to all plaintiffs and a new trial awarded against the defendant Cook upon the ground, among others, that several instructions of the trial court accentuated the duty of the plaintiffs and minimized the duty of the defendants. Apparently the phrase "if any" was used too often in defendants' instructions and not often enough in plaintiffs' instructions.

However, the court held that it was error not to grant the motion of W. S. Hatch Company, Inc., for a directed verdict and the appellate court dismissed the action as to that defendant. The court said: "* * * it appears from the record that the plaintiffs by a preponderance of the evidence, or by any evidence, failed to prove that the defendant Hatch committed any act of negligence which caused or contributed to the cause of the accident. It is to be recalled that the only act or omission on the part of Hatch Company was that the driver of the Hatch vehicle * * * by signal or some motion directed Mrs. Cook to proceed. We do not believe that it is the law, that the giving of such a signal was an act of negligence on the part of the driver. All the signal amounted to, if given, was a manifestation on the part of Metcalf to Mrs. Cook that as far as he was concerned Mrs. Cook could proceed. At the most all he did was to signal to Mrs. Cook and indicate, as far as Metcalf was concerned, he yielded her the right-of-way. She could see that he was on the left side of the cab of his truck and therefore in no position to see, or to give her any assurance, that there was no traffic approaching upon the right of his truck from the rear."

It is apparent from the statement of the case in the opinion that the driver of the Cook car was in a better position to observe the Devine car than was the driver of the truck and, in accord with apparently all of the authority on the subject, Hatch would not be liable. But, the court did not stop there. The opinion continued: "We approve the rule laid down in the case of Harris v. Kansas City Public Service Co., 132 Kan. 715, 297 P. 718, 720, in which the Court states: * * *"; and thereafter quotes from that case the statements that are heretofore contained in this opinion to the effect that there was no duty upon the operator of the streetcar to protect pedestrians from streetcars on parallel tracks, and that it would have been "a usurpation of the police powers of the city government itself for defendant to have authorized its motorman to

undertake'' the duty of directing streetcar traffic or signalling the plaintiff ''that she could cross the street in safety.'' Since nothing further is said in the opinion or any cases cited with regard to the act of the truck driver being without the scope of his employment, it must be assumed that the *Harris* case was not cited for that purpose and perhaps not interpreted in that manner. Later in the opinion is this cautious reservation: ''In concluding that the Trial Court committed error in not granting the defendant W. S. Hatch Company, Inc. motion for a directed verdict, we do not mean to say, nor to be understood as saying, that the decision reached in this case would be or should be applied to all cases involving signals or motions given by drivers of vehicles to others.'' There is no headnote upon the question of whether the driver was acting outside the scope or course of his employment, and that question is not mentioned in the editorial synopsis of the case preceding the headnotes.

It seems clear from the cases cited in an annotation beginning at page 252 of 48 A.L.R. 2d that when the driver of a vehicle negligently signals to a following driver that it is safe to pass and injury results from the driver's negligence the master may be liable for the act of the servant. *Haralson v. Jones Truck Lines, et al.*, 223 Ark. 813, 270 S. W. 2d 892, the lead case of the annotation; *Judt v. Reinhardt Transfer Company*, 32 Ohio Ops. 161; *Rodi v. Florida Greyhound Lines, Inc.* (Fla. 1952), 62 So. 2d 355. In the *Haralson* case the action for wrongful death was against Jones Truck Lines, its driver, Jack Fulfer, and Clifton Duvall, the driver of the other truck involved in the accident. The trial court directed a verdict for all three defendants, but the Supreme Court reversed the decision and remanded the case stating that jury questions were presented by the evidence as to all defendants. The 8th Headnote reads: ''One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'' In the opinion is this statement: ''Hence

this defendant and his employer insist that they violated no duty owed to the decedent since their vehicle remained continuously on its own side of the highway. This argument would be highly persuasive were it not for the fact that Fulfer signalled the trailing vehicle to pass him. We think this fact to be of controlling importance in the case."

The case of *Sweet, a minor, etc. v. Ringwelski, Crawford Door Sales Co., and Thompson*, 362 Michigan 138, 106 N. W. 2d 742, was decided January 9, 1961. The opinion in that case was, of course, not available to the judge of the circuit court when he considered the instant case upon writ of error, nor to counsel when the case was briefed and argued in this Court. These are the facts in the *Sweet* case: Plaintiff, a ten year old girl, walking east along an east-west street came to an intersection with a north-south street, started to cross, and reached the center thereof when she saw north bound vehicles approaching from her right and stopped to wait for them to pass. The first such vehicle was a truck, owned by defendant Crawford Door Sales Co., and driven by Thompson, its employee. It was proceeding in the north bound lane nearest the center and when it stopped at the crosswalk other vehicles stopped behind it. "Defendant Thompson waved to plaintiff to cross in front of him. She did so. When she had passed in front of the truck and taken two or three steps beyond it she was struck by the automobile driven by the defendant Ringwelski which was also traveling north in the lane immediately east of the truck which it was undertaking to pass." The trial court directed a verdict for defendant Thompson and his corporate employer, and the jury returned a verdict in favor of the defendant Ringwelski. In a unanimous decision the Supreme Court of Michigan reversed and remanded the case for a new trial as to all defendants. The plaintiff was granted a new trial as to Ringwelski because the trial court committed prejudicial error in giving certain instructions to the jury. The court also

held that the evidence presented questions of fact as to the negligence of the defendants Thompson and the Crawford Company. Chief Justice Dethmers, who wrote the opinion for the court, said:

"Defendants Thompson and Crawford Company, for support of their claim of no negligence on their part, rely on Devine v. Cook, 3 Utah 2d 134, 279 P. 2d 1073. Involved in that case were two adult motorists. The one who was signalled to proceed had as good or better opportunity than the other to observe the approach of a third vehicle. Whatever validity there may have been, under the facts of that case, to the court's view that the defendant's waving motion should, at most, and as a matter of law, be held to amount only to a manifestation that the waver would wait for the other and not an assurance of safety with regard to other vehicles, such are not the facts here. Plaintiff was a 10-year-old girl. Her vision of the Ringwelski car may have been obstructed by the truck when Thompson waved to her. She testified that she proceeded to the point of impact because she had relied on what she considered directions from an adult and that she would not otherwise have gone on until the traffic had cleared. We do not believe that the court should have determined, as a matter of law, the intended meaning of Thompson's waving action and, more important, the thought that it might reasonably have been anticipated would be conveyed thereby to the 10-year-old girl. These, it seems to us, were questions of fact for the jury. The answers would be determinative of the question of Thompson's negligence."

The evidence as to the negligence of Schoolcraft upon which the jury returned its verdict against him and Conlon is much stronger than in the *Sweet* case. Schoolcraft was facing in the direction from which the Holbert car was approaching and, while he stated on direct examination that the Holbert car was about twenty-five feet away when he "first saw it", he was confronted on cross-examination with a written signed statement which he was alleged to have made, and

which he admitted signing on January 1, 1958, about nine months after the accident, which contained this language: "When I first saw the car which hit the girls, it was just making *his* turn from Rte. 14 into Rte. 119 and starting to go north. He had just come in sight when I first motioned to the girls. I cannot estimate his speed but it seemed to me that he was over the speed limit." It was established by the evidence that the distance from Schoolcraft's truck to the intersection of Routes 14 and 119 was approximately three hundred feet.

In this jurisdiction and elsewhere the rule is almost universal to the effect that the contributory negligence of an infant under fourteen years of age is, except in rare instances, a question of fact for a jury. *Pierson v. Liming,* 113 W. Va. 145, 167 S. E. 131; *Prunty v. Tyler Traction Co.,* 90 W. Va. 194, 110 S. E. 570; Vol. 1, The Law of Automobiles, Va. and W. Va., § 34. There was no evidence introduced in the trial of this case that would take it out of the general rule.

The judgment of the Circuit Court of Kanawha County reversing the judgment of the Court of Common Pleas of Kanawha County, setting aside the verdict and remanding the case for a new trial, is affirmed in accordance with the principles expressed herein.

*Affirmed.*

BERRY, JUDGE: concurring in part and dissenting in part:

I concur in the result of the majority opinion in this case, but dissent to the holdings in the majority opinion that the waving by the defendant, Schoolcraft, to the plaintiff to pass in front of his stopped truck, which was owned by the defendant, Conlon Baking Company, consisted of a question of fact as to whether this act was within the scope of his employment to be considered by the jury; that the verdict was not excessive, although a new trial would be had and the evidence may be different in another trial; and, that

there was no evidence introduced in the trial of this case which would take it out of the general rule with regard to contributory negligence on the part of the infant plaintiff.

The defendant, Schoolcraft, was employed by the defendant, Conlon Baking Company, to drive its truck and to sell its products at the time the infant plaintiff was struck by the defendant Holbert's automobile. Schoolcraft was neither driving the truck nor selling any products at the time of the accident. He had stopped the truck on State Highway No. 119 near its intersection with State Highway No. 4 at Clendenin, approximately 300 feet from said intersection. After Schoolcraft motioned to the plaintiff to proceed in front of his truck, it is stated in the majority opinion that she waited about ten or fifteen seconds, then crossed in front of the truck and into the other traffic lane where she was struck by Holbert's automobile which was approaching from the opposite direction. The plaintiff was struck by the right front of Holbert's automobile. Assuming Holbert's automobile was at the intersection of Routes 119 and 4 at the time Schoolcraft waved or signalled the plaintiff to pass in front of his truck, as indicated in the record, there would have been ample time for the plaintiff to have crossed the highway if she had proceeded to cross when Schoolcraft directed her to. However, she waited ten or fifteen seconds, then attempted to cross at a time when the Holbert vehicle had covered the 300 feet, and was struck by it.

The Circuit Court of Kanawha County, upon a writ of error granted by it, held that Schoolcraft was acting outside the scope of his employment when he waved or signalled the plaintiff to pass in front of his truck, and that the Conlon Baking Company was not liable for such action on the part of its employee Schoolcraft. I would affirm the Circuit Court on this point.

There are few cases in this country dealing with similar circumstances such as are involved in the case

at bar. In the recent case of *Sweet, a minor, etc. v. Ringwelski, Crawford Door Sales Co., and Thompson,* 362 Michigan 138, 106 N.W. (2d) 742, which involved a ten year old girl crossing a street after having been waved by a driver of a truck to do so, the question of negligence on the part of the truck driver and his employer was submitted to the jury for determination, but apparently the question of scope of employment on the part of the truck driver was not raised.

In the case of *Harris v. Kansas City Public Service Co.,* 132 Kan. 715, 297 P. 718, where a streetcar motorman waved or signalled to an adult plaintiff to walk in front of his streetcar and she was struck by a vehicle coming from the opposite direction, it was clearly indicated that the act on the part of the motorman in directing the plaintiff to pass in front of his streetcar was outside the scope of his employment. It was held that the employer, the streetcar company, could not have conferred such authority and responsibility on its motorman employee, that it would have been a usurpation of the police powers of the municipality for the defendant streetcar company to have authorized its motorman to undertake the duty of directing pedestrial traffic. It was held in the case of *Devine, et al. v. Cook and W. S. Hatch Co., Inc.,* 3 Utah (2d) 134, 279 P. (2d) 1073, involving two adult motorists, that the one signalled has as good, if not better, opportunity to have observed the approach of the third vehicle than the one giving the signal, and therefore there was no liability incurred on the part of the defendant by his signalling.

The weight of authority in this country is to the effect that there is ordinarily no liability on the part of an employer incurred in his driver's giving assistance to others. See 51 A.L.R. (2d) page 42 § 9. In cases in the minority where an employer was held liable, usually to third parties, most of the liability resulted from the manner in which the driver parked the vehicle or maneuvered it, acts not performed by Schoolcraft.

Under the facts of the case at bar, I am of the opinion that the Conlon Baking Company would not be liable under any circumstances, because the act of the defendant, Schoolcraft, in waving to the plaintiff to pass in front of his truck was outside the scope of his employment. It was tantamount to directing traffic, and he was not employed by the Conlon Baking **Company for any such purpose.** It is only a matter of degree as to whether he was directing traffic, while standing in a parked truck, or whether he was standing in the middle of the highway, and certainly under no stretch of the imagination could the Conlon Baking Company be held liable for any actions on the part of Schoolcraft had he been standing in the middle of the highway directing traffic or waving pedestrians across the highway.

Then, too, notwithstanding the statements contained in the majority opinion that the plaintiff was thirteen years of age, she was nearly fourteen. The accident occurred in April, 1957, and she was fourteen in July, 1957. She was in the eighth grade at school, made high grades, was an intelligent girl, and had considerable experience walking along and crossing the highways in and around Clendenin. She was familiar with the highway and the flow of traffic at the scene of the accident. She waited ten or fifteen seconds after Schoolcraft waved or signalled her to cross the highway and did not look to ascertain whether or not a vehicle was approaching from the opposite direction. She was asked the question that if she had looked could she have seen the automobile which was driven by the defendant Holbert, and her reply was, "Yes, sir". Although she stated that she did not look to see if a car was approaching, the trial court sustained an objection to the question and answer referred to above, and the jury was not allowed to consider it. Inasmuch as the plaintiff in this case was almost fourteen years of age, had better than average intelligence and training than a fourteen year old girl, she could not have been placed in the same category

as the ten year old infant involved in the *Sweet* case, but, should be treated as the adult involved in the case of *Devine v. Cook et al., supra,* which was distinguished by the Michigan Court in the *Sweet* case.

The question of intelligence and the care and caution the plaintiff should have exercised, considering all the facts relative to her age, experience, etc. in the trial of this case, should be considered in connection with the question of contributory negligence. *Jones v. Ambrose,* 128 W. Va. 715, 38 S. E. 2d 263. It was held in the case of *Schoonover v. Railroad Co.,* 69 W. Va. 560, 73 S. E. 266, that an infant eleven years of age who attempted to cross a railway crossing without looking to ascertain whether or not a train was approaching was guilty of contributory negligence as a matter of law. It was stated in that case that ''Numerous decisions declare that in cases of injury occuring upon highways and railroads, failure of a child to exercise such care, caution and foresight as is ordinarily possessed and exercised by children of his age will bar recovery for an injury thereby occasioned.'' The Court further stated in the *Schoonover* case, at page 568, the following: ''We have no doubt the plaintiff knew the danger of going upon a railroad track without looking for trains. His home was in Clay county on the line of a railroad and he was in Huntington at the time of the injury, attending the spring term of school at Marshall College. His situation and engagement at the time indicate possession of the intelligence and discretion of boys of his age, thousands·of whom daily cross railroads, trolley lines and highways, exercising discretion and prudence requisite to their safety. Hence the trial court properly held him guilty of negligence as matter of law.''

I am therefore of the opinion that it was reversible error for the trial court to refuse defendant's instruction number 11, wherein the jury would have been told that the plaintiff was capable of being guilty of contributory negligence as a matter of law under the evidence in the case at bar, and that if they found

from a preponderance of the evidence that she was negligent at the time of the accident and that such negligence proximately contributed to her injuries, she could not prevail.

Regardless of whether or not the verdict of $65,000.00 was excessive, I would express no opinion with regard to this matter at this time, because the evidence may be different in another trial of this case. *Cook v. Railway Co.*, 97 W. Va. 420, 125 S. E. 106; *Leftwich v. Wesco Corp.*, 146 W. Va. 196, 119 S. E. 2d 401.

For the reasons stated herein, I would affirm the Circuit Court of Kanawha County in holding that the Conlon Baking Company was not liable as a matter of law; that the presumption that the plaintiff could not be guilty of contributory negligence has been rebutted; and that no ruling as to whether or not the verdict was excessive should be made at this time.

I am authorized to say that Judge Given joins in this concurring and dissenting opinion.